[Civ. No. 6071. Third Appellate District.—May 18, 1939.]

GEORGE LANGAZO, Respondent, v. SAN JOAQUIN LIGHT AND POWER CORPORATION (a Corporation), Appellant.

Thomas J. Straub, W. H. Spaulding, John J. Briare and F. H. Pearson for Appellant.

Louis T. Milburn and Preston & Braucht for Respondent.

THE COURT.—This is an action brought to recover damages arising out of the death of Gilbert Langazo, the minor son of plaintiff. Judgment upon the verdict of the jury was entered against appellant in the sum of $15,400. Upon motion for new trial, the sum of $5,000 was remitted therefrom. The appeal is taken from the judgment.

On the afternoon of February 22, 1937, the deceased, Gilbert Langazo, while walking across a field near Mariposa, traversed by a power line of the appellant, San Joaquin Light and Power Corporation, met his death by electrocution from contact with a sagging portion of an abandoned telephone line, attached to poles of the power line. The only witnesses to the fatal accident were his two girl companions, Phyllis Richardson and Hazel Swanzey. When the party reached the point where it became necessary to pass under the power line, Phyllis Richardson was walking a short distance ahead of Gilbert Langazo, the deceased, and Hazel Swanzey was a few feet behind. Hazel Swanzey is, therefore, the only person who saw all that happened. She testified that as Phyllis, who was ahead of the others, went underneath the telephone wire, she touched it with her hand and went over and sat down under a tree, "and as Gilbert (the deceased), reached the line he took hold of it with one hand to lift it over his head, and as he started to do that, to lift it over his head, he let out a scream" and fell, and that the witness "was just within one foot or two from his head when he fell". She further testified that she and Phyllis are each about five feet

two or three inches in height, and that the sagging telephone wire, with reference to Phyllis' height, "was not quite to the top of her head; it was along her forehead". After the deceased fell, the witness observed that the grass at his feet was on fire, and she stamped the fire out.

Dr. John B. Webster, who was called to the scene of the accident immediately after it happened, testified that the deceased died as a result of electric shock, and that fact is not disputed.

The land on which the accident occurred is owned by the Mariposa Commercial and Mining Company, and has been leased to E. J. Gann for twenty-six or twenty-seven years. The scene of the accident is a wooded hillside about one hundred yards from the Mariposa High School, and was frequented both by the general public and by high school students. The general public had been accustomed for many years to walk over the land. This land was under lease to the lessee, Gann, for grazing purposes only, and at the time of the accident, was not plowed or under cultivation. In addition to the fact that the general public had had free access to the field in which the accident occurred, and that they walked over and across it at will, it was shown that the field was used occasionally as a playground by a small number of high school students. The telephone line was disconnected in the year 1921. For some years prior to the accident the defendant had permitted unused fragments of the line to remain on the power-line poles at various points along the right of way. The portion of the abandoned telephone line which was the wire the deceased took hold of at the time of the accident, was attached to two of the poles carrying a high tension line, and there was an intervening pole from which the cross-arm which formerly carried the sagging wire had become broken, and the insulator and a part of the cross-arm had fallen to the ground, and the wire had thus become detached and permitted to sag between the other two poles to which it was still affixed. On the day of the accident the insulator attached to the broken part of the cross-arm which had fallen from the power-line pole was found imbedded in the dry, dead grass. This cross-arm had been broken a long time before the accident on February 22, 1937, as was evidenced by the appearance of the cross-arm which was admitted in evidence, and from the fact that the grass had grown up over

the cross-arm and the insulator affixed thereto, and from the photograph in evidence showing such condition.

The appellant had a right of way for its transmission line over and across the tract of land which was leased to Gann, the grant of the power company providing "that the party of the second part, its successors and assignors, shall exercise the rights hereby granted, in such manner as shall cause the least possible interference with the use of the said strip of land by the party of the first part, its successors and assigns, for pasture, agricultural, horticultural and mining purposes, or any thereof". Just how the old telephone wire became charged with the fatal current of electricity is not disclosed by the evidence.

It is first contended by appellant that the evidence is insufficient to support a finding of negligence. Respondent takes the position that the case comes within the general rule "that a violation of a statute or of a county or municipal ordinance, which directly causes injury to another, constitutes negligence as a matter of law". (19 Cal. Jur., p. 632, sec. 65.)

In this connection the latter relies upon a violation of the following general orders of the railroad commission of this state:

"Lines or portions of lines permanently abandoned shall be removed by their owners so that such lines shall not become a public nuisance or a hazard to life or property." (Par. 31.7 of section III of General Order No. 64-A of California Railroad Commission.) "The owners and employees of such system shall at all times exercise due care to reduce to a minimum the hazard of accidental injury to their own or fellow employees, to the public and other utilities due to the presence of overhead wires." (Par. 31.1 of section III of General Order No. 64-A of California Railroad Commission.)

"Lines shall be inspected frequently and thoroughly for the purpose of insuring their maintenance in a good condition so as to conform to these rules. Any defects found shall be promptly rectified. Lines temporarily out of service shall be inspected and maintained in such condition as not to create a hazard". (Par. 31.2, sec. III, of above order.)

As to the sufficiency of the evidence to bring the case under the first order above quoted, the facts proven show clearly

that the jury were justified in finding that the telephone line in question was "permanently abandoned". It had not been used for over a period of sixteen years, nor had it been in a condition where any use whatever could be made of it for a number of years preceding the accident. The span of wire with which the decedent came in contact lead nowhere. Each end thereof had been cut and wrapped around the cross-arm of the power pole to which it was attached. Under the middle pole, where the wire had become detached, an insulator which formerly supported the wire at that point, was found imbedded in the dry grass. The cross-arm was broken and a portion lay upon the ground, in a similar situation.

■ It is urged, however, that the regulations of the railroad commission mentioned above do not have the force of law, and hence are not within the rule quoted above from California Jurisprudence. This court decided the question adverse to appellant's contention in the case of *Morris* v. *Sierra etc. Power Co.*, 57 Cal. App. 281–289 [207 Pac. 262] :

"We presume it will not be questioned that the legislature in the exercise of the power conferred upon it by the provisions of Sections 22 and 23 of Article XII of the Constitution may rightfully invest the Railroad Commission with plenary power to regulate the manner in which Railroad Corporations and other public utilities shall maintain and conduct their business and the essential appliances thereof and that said Commission may prescribe such regulations with respect to the carrying on of such utilities as may be necessary to safeguard and protect any rights of the public which may be affected thereby. And it will not be doubted that, upon the adoption of such regulations as it is within the legal competence of the Railroad Commission to promulgate with respect to public utilities and the maintenance of the essential equipments thereof, such regulations immediately acquire the force of law. Indeed, it is so declared by the legislature itself in Section 30 of an Act of the extra sessions of the legislature of 1911, page 18, entitled, in part: 'An Act to provide for the organization of the Railroad Commission, to define its powers and duties and the rights, remedies, powers and duties of public utilities', etc. Said section reads: 'Every public utility shall obey and comply with each and every requirement of every order, decision, direction, rule or regulation made or prescribed by the commission in the matters

herein specified, or any other matter in any way relating to or affecting its business as a public utility, and shall do everything necessary or proper in order to secure compliance with and observance of every such order, decision, direction, rule or regulation by all of its officers, agents and employees.' ''

The same rule was followed in *Howell* v. *San Joaquin Light & Power Corp.*, 87 Cal. App. 44 [261 Pac. 1107], where it is stated:

"Likewise, as held in the case of *Morris* v. *Sierra etc. Co.*, *supra*, and as also held in the case of *Sickles* v. *Mt. Whitney Power & Electric Co.*, 177 Cal. 278 [170 Pac. 599], the failure of the Power Company to maintain its line carrying 11,000 voltage with a minimum clearance of 25 feet, as provided by the order of the Railroad Commission, and its disregard of the order of the Railroad Commission in this respect, must be held as showing negligence *per se* on the part of the defendant."

The case of *Winkie* v. *Turlock Irr. Dist.*, 24 Cal. App. (2d) 1 [74 Pac. (2d) 302], is not inconsistent with the foregoing authorities. We merely held there that the irrigation district was not subject to the jurisdiction of the railroad commission, and that therefore the rules of the commission, which had no legal application, could not be set up as the measure of care in determining the question of negligence of the district. We are of the opinion, therefore, that there was sufficient evidence of negligence upon the part of appellant to justify a finding in favor of plaintiff on that issue.

It is next contended that "the physical facts demonstrate, against any testimony to the contrary, that the sole cause of the accident was the wilful act, or at best the negligent act of decedent himself". Expert testimony upon the part of appellant was to the effect that in no other way could the telephone wire become charged with current from the power line except by being brought in contact therewith. A witness who saw the accident in its entirety, being but a few steps away, testified that the deceased merely lifted the telephone wire, or was in the act of lifting it (apparently endeavoring to pass under it), *and that he did not pull* on it or jerk it. Relying upon such expert testimony, the position of the body after the accident (parallel to the power lines), and a burn on the right side of the neck, appellant contends that the testimony of plaintiff's witness is inherently impossi-

ble, and must be disregarded. Having disregarded it, we are asked to accept its version of the accident, which is that decedent *jerked the wire uphill* so far and with such force as to cause it to rise and flip into the power wires in a span over two succeeding poles. They contend that we must recognize that certain facts are controlled by immutable physical laws which cannot be contradicted by positive testimony to the contrary, citing *Coughlin* v. *Great Western Power Co.*, 183 Cal. 548 [191 Pac. 920], which lays down such a rule. In *that* case, all experts testified that a current of 22,000 volts (twice the voltage here), could not jump or "arc" more than 1.2 of an inch from the wire, and testimony to the effect that it jumped 21 inches was eliminated upon appeal. Expert testimony *here* was to the effect that the accident could only occur through jerking and flipping the telephone wire. We believe that expert testimony as to the distance an electric spark will jump is in a different category from the expert testimony in this case. Here, the expert did not confine himself to a demonstrated law of physics. He told the jury that the telephone wire could not be charged with electricity without contact with a power line, but it does not necessarily follow, nor were the jury *bound* to find from such testimony, that *decedent* made such contact. That was clearly a matter for the jury, and they impliedly found that he did not. We do not believe that the rule stated by appellant is applicable to the situation here; hence, we hold that there was sufficient evidence to sustain a finding that deceased was not guilty of contributory negligence. ▮ We might add that appellant does not dispute the fact that the current which killed the young man came from its power line overhead, and it must be remembered that the burden of establishing a defense of contributory negligence is upon the defendant. Such burden has not been sustained to the degree that "from the facts, reasonable men can draw but one inference, which inference points unerringly to the negligence of plaintiff proximately contributing to his own injury". (*Crawford* v. *Southern Pacific Co. et al.*, 3 Cal. (2d) 427 [45 Pac. (2d) 183].)

▮ It is further urged that decedent was a trespasser, or at most, a mere licensee, and that defendant owed him no legal duty, except that while upon the premises, no wanton or wilful injury should be inflicted upon him. (*Means* v. *Southern California R. R. Co.*, 144 Cal. 473–477 [77 Pac.

1001, 1 Ann. Cas. 206].) There is evidence in the record that the tenant of the real property where the accident occurred, permitted students of the high school a short distance away, and other members of the public to walk across his land. There is evidence that some students used the land for athletic activities. "In a general sense, any invasion of another's rights is a trespass." (63 C. J. 886.) Did the decedent invade any right of the power company? We must first determine what the rights of the *company* were in respect to the land where the accident occurred. If the rights of the *latter* were not invaded by decedent in being upon the real property involved, there obviously could be no trespass committed as against the power company. The record shows that the owner of the real property granted "a right of way" to the power company over a strip of land 20 feet in width, with the right to erect a single line of towers or poles thereon and wire suspended thereon. "The rights of any person having an easement in the land of another are measured and defined by the purpose and character of that easement; and the right to use the land remains in the owner of the fee so far as such right is consistent with the purpose and character of the easement." (17 Am. Jur. 993.) Appellant had no right to fence the right of way, nor did it have any right to the use or possession thereof, except for limited purposes, such as repair, maintenance and construction, as set forth in the grant. Thus, except for the reservations made in the grant, the owner had the same complete dominion and control over this 20-foot strip as he had over the remainder of his property. For the reasons given, the weight of authority in this country is to the effect that although decedent may have been a trespasser as to the owner of the real property, the power company cannot take advantage of that fact. The general rule, deduced from a long line of cases referred to in a note, is thus expressed by the editor in 56 A. L. R. 1030:

"The doctrine that a power company or person maintaining wires over another's land cannot take advantage of the fact that the injured person was a trespasser on the property where he was injured has gained additional support from a considerable number of recent decisions in addition to those cited in the previous annotation,—some of which, it will be noted, are in jurisdictions which had theretofore not passed upon this troublesome question; and these accessions, per-

haps, give that doctrine the weight of authority, although, as stated in the earlier annotation, the cases were then quite evenly divided upon it.''

This is the law laid down in 20 C. J., page 350:

''The doctrine of non-liability to trespassers or licensees has been applied to relieve defendant of liability where the trespass or license was with respect to the property of a third person and not to that of defendant. But according to the apparent weight of authority, that doctrine has no application to such class of cases, because, conceding that plaintiff was a trespasser as to the owner, he was not a trespasser as to defendant, and defendant may be held liable for negligence in failing to exercise proper care and precaution to prevent injury, not only to persons who had a right to be at the place where the injury occurred, as to whom liability for negligence is unquestioned, but also as to persons whom defendant should reasonably have anticipated might be present and exposed to danger at that place, as in the case of places to which children or other persons are accustomed to resort, although without technical right to be at such places.''

One of the leading cases upon this point is *Humphrey* v. *Twin State Gas & Elec. Co.*, 100 Vt. 414 [139 Atl. 440, 56 A. L. R. 1011]. We quote from that decision:

''The parties disagree as to plaintiff's standing while he was on the Thomas land: The plaintiff says he was there by an implied license; the defendant says he was a trespasser. We do not stop to consider this question. He was not an invitee, and for the purposes of this discussion we will assume that he was a trespasser. Being such, he could recover nothing from Thomas for injuries resulting from the condition of the premises, though these existed through the latter's carelessness. This result follows from the fact that Thomas owed him no duty to keep the premises safe for his unlawful use. The defendant takes the position that, so far as the plaintiff's rights go, it stands in Thomas' position and can make the same defense that he could; that it owed the plaintiff no duty, and consequently any negligence proved against it is not actionable so far as the plaintiff can assert. . . . A trespass is an injury to the possession; and, as it is only he whose possession is disturbed who can sue therefor, so it should be that he, alone, could assert the unlawful inva-

sion when suit is brought by an injured trespasser. One should not be allowed 'to defend an indefensible act' by showing that the party injured was engaged in doing something which, as to a third person, was unlawful.''

Another case where the matter is given exhaustive treatment is that of *Guinn* v. *Delaware & A. Tel. & Tel. Co.*, 72 N. J. L. 276 [62 Atl. 412, 111 Am. St. Rep. 668, 3 L. R. A. (N. S.) 988], where it is said:

''The exemption of the landowner from liability as to trespassers and licensees is necessary to secure him the beneficial use of his land; but no reason exists for extending this exemption to the case where the rights of the defendant have not been interfered with. There is no proof that the defendant had any right to maintain the pole and wire; but, even if it had, the deceased is not shown to have interfered with the defendant's rights. The right to maintain the pole and wire did not involve the right to have the wire swing loose or occupy another portion of the field. Whoever interfered with the pole and wire in place might be a trespasser, but he would not be a trespasser upon the defendant's rights if he came in contact with the wire elsewhere.''

Turning to California, this court, in the case of *Roberts* v. *Pacific Gas & Elec. Co.*, 102 Cal. App. 422, 429 [283 Pac. 353], disposed of a similar situation in the following language:

''The fact that the deceased was a trespasser with respect to the defendant City of Chico by virtue of his wrongful violation of its property rights, in no sense exempts the defendant Pacific Gas and Electric Company from liability for negligence. The electric company had no property rights in the fallen tree which were interfered with. In spite of the exemption from liability on the part of the owner of the tree, the electric company still owed the deceased the duty of exercising due caution for his safety. In 2 Joyce on Electric Law, 986, it is said: 'The fact that one is a trespasser as between himself and a landowner is not held to relieve an electric company from the duty to exercise care towards the former and the jury may infer negligence from the omission of a guard wire.' In the case of *Guinn* v. *Delaware & A. Tel. Co.*, 72 N. J. L. 276 [111 Am. St. Rep. 668, 2 L. R. A. (N. S.) 988, 62 Atl. 412, 413], a guy-wire had been stretched

by the defendant electric company over an open field across which people were accustomed to travel at will to and from a ball ground in an adjoining field. The guy-wire broke and fell across a live electric wire. Thus charged with electricity the guy-wire dangled down into the grass where a boy who was crossing the field without license came in contact with it and was killed. The defendant electric company contended it owed the deceased no duty to preserve his safety for the reason that he was a trespasser. This theory was denied by the court, which held that although the landowner might set up this defense in a proper action, the defendant electric company could not avail itself of this exemption from liability. The court said: 'If (the deceased were) a trespasser, his wrong would be to the landowner alone, not a public wrong, nor a wrong to the defendant. The case differs from one where a trespasser or licensee seeks to recover of the landowner. A landowner may, in fact, reasonably anticipate an invasion of his property, but in law he is entitled to assume that he will not be interfered with. His right to protect his property and the use of his property is paramount. . . . The exemption of the landowner from liability as to trespassers and licensees is necessary to secure him the beneficial use of his land; but no reason exists for extending this exemption to the case where the rights of the defendant have not been interfered with.' "

It is the position of appellant that it "stood in the shoes" of the landowner, and if decedent was a trespasser as to the owner, it was likewise a trespasser as to the power company. There are a number of authorities which so hold, but we believe that both reason and logic favor the opposing view. The owner of the easement must stand upon his own rights, and no wave of the wand can transmit the landowner's rights to the easement owner, for the sole purpose of permitting the latter to escape responsibility for negligence. The case of *Borgnis* v. *California-Oregon Power Co.*, 84 Cal. App. 465 [258 Pac. 394], is not authority for the rule which appellant would have us adopt. In denying a hearing in that case the Supreme Court expressly refused to approve a rule which tended to uphold the appellant here; hence, what was said in the main opinion on the question of the status of the plaintiff there, has no authoritative effect whatever. It is possible

that the Supreme Court, in thus limiting the effect of that decision, had in mind the rule which we have set forth, and which we believe to be the correct one. In the case of *Lindholm* v. *Northwestern Pacific R. R. Co.*, 79 Cal. App. 34 [248 Pac. 1033], cited by appellant, the defendant was repairing boat machinery on the premises of Moore Shipbuilding Company, using its own workmen. The evidence showed that defendant was there with the permission and consent of the Moore company, and the court held that plaintiff was a trespasser not only in respect to the owner of the premises, but also as to anyone else who was rightfully and lawfully in possession under the owner. Here, the power company not only had no right to the possession of the land upon which the easement was imposed, but it never was in actual possession of the strip covered by the right of way. We have carefully reviewed other California cases relied upon by appellant to sustain their contention, but in none of them is the question squarely raised or decided, and we therefore adopt the view sustained by the weight of authority in this country.

The status of decedent, if we assume that he was a mere trespasser, cannot be used to limit the measure of care in this case for another reason which is explained in the rule laid down in 45 Corpus Juris, page 730, where it is said:

"Notwithstanding the general rule that the owner or person in charge of property owes to trespassers or mere licensees thereon, no duty to keep the premises safe, it has been held that violation of a statutory duty with respect to the condition of property, imposed for the safety of the individuals composing the general public, may result in liability to one who is injured in consequence thereof, although he is a mere licensee or even a trespasser."

As we have stated above, the violation of the order of the railroad commission in respect to the duty of appellant to remove the abandoned telephone line was, in effect, a violation of the law, and therefore negligence *per se*. The order quoted above specifically recites that its purpose is to remove a hazard to "life or property". Section 73 of the Utilities Act (above) gives a right of action in damages to any person who is injured through an omission to comply with any order of the commission. The action of the company in permitting the telephone wires to remain, was clearly "a violation of a

statutory duty with respect to the condition of the property'';
hence, the facts bring the case directly within the scope of
the rule laid down in Corpus Juris.  The cases which support
this rule are based upon the fundamental concept that the
question of the status of the party injured cannot be raised,
for the reason that the law is a police regulation designed to
protect the public.  The case of *Conway* v. *Monidah Trust
Co.*, 47 Mont. 269 [132 Pac. 26, L. R. A. 1915E, 500], lays
down this rule with clarity and thoroughness.  There, the
statute provided that all mining shafts within certain limits
of a town or city, must be enclosed by a substantial fence.
Plaintiff, a child of seven years, while trespassing upon the
property where the shaft was situated, fell down the shaft
and was injured.  There was no fence, and the defendant
thus violated the law in failing to maintain one.  We quote
from the opinion:

''The question, then, is whether or not a trespasser upon
private property may recover damages for injury suffered by
him while so trespassing, because of the property owner's
failure to comply with section 8535, Revised Codes.  This
section is found in title 10 of part 1 of the Penal Code, under
the heading: 'Crimes Against the Public Health and Safety',
and, so far as pertinent to this case, reads as follows: 'Every
person who sinks any shaft . . . or causes the same to be
done, within the limits of any city or town or village in this
state, or within one mile of the corporate limits of any city
or town . . . and who shall fail to place a substantial cover
over, or tight fence around the same, is punishable by a fine
not exceeding one thousand dollars.  The owner of any prop-
erty . . . shall be deemed to be within the provisions of this
act if he permit any such shaft . . . to remain open, exposed
or unprotected upon his property . . . for a period of more
more than ten days. . . . Does the duty imposed by section
8535 apply for the benefit of persons who may by chance be
technical trespassers upon mining property?  This question,
both directly and in its analogies, has been before many
courts with apparent diversity of result; but no real diffi-
culty is encountered in extracting a consistent rule out of
the apparent conflict of decision, when it is observed that the
various statutes involved are interpreted according to sub-
stantially this classification: (a) Those imposing duties to or

for the benefit of the municipality or to the public considered as an entity. From such statutes no private right of action arises. (*Heeney* v. *Sprague,* 11 R. I. 456 [23 Am. Rep. 502] ; *Taylor* v. *Lake Shore & M. S. Ry.,* 45 Mich. 74 [7 N. W. 728, 40 Am. Rep. 457] ; *Frontier Steam Laundry Co.* v. *Conolly,* 72 Neb. 767 [101 N. W. 995, 68 L. R. A. 425].) (b) Those imposing duties to persons of a particular class. To have a right of action from such a statute one must clearly belong to the contemplated class. (*Osterholm* v. *Boston & Mont. etc. Co., supra,* 40 Mont. 508 [107 Pac. 499] ; *Toomey* v. *Southern Pacific Ry.,* 86 Cal. 374 [24 Pac. 1074, 10 L. R. A. 139] ; *Flanagan* v. *Sanders,* 138 Mich. 253 [101 N. W. 581].) (c) Those imposing duties to the public, considered as a composite of individuals, in which case a right of action does arise in one of the public when, and only when, he has sustained some special injury by reason of non-compliance. (*Hayes* v. *Michigan C. R. Co.,* 111 U. S. 228, 239, 240 [4 Sup. Ct. 369, 28 L. Ed. 410] ; *Philadelphia W. & B. Ry.* v. *Stebbing,* 62 Md. 504, 516, 517; *Sluder* v. *St. Louis Transit Co.,* 189 Mo. 107 [88 S. W. 648, 5 L. R. A. (N. S.) 187] ; *Union Pacific Ry.* v. *McDonald,* 152 U. S. 262, 282 [14 Sup. Ct. 619, 38 L. Ed. 434].) It may be said, and perhaps correctly, that these are essentially restatements of the same thing, looked at from different angles (note, 9 L. R. A. (N. S.) 343; but that is unimportant. The important thing is that there are statutes such as we have mentioned under (c), and these statutes usually bear the aspect of police regulations for the protection of the public relative to matters with which the public contact is commonly through individuals, and as to which the individuals are entitled to assume that the law has been observed. (*South & North Alabama Ry. Co.* v. *Donovan,* 84 Ala. 141 [4 So. 142] ; *Jackson* v. *Kansas C. etc. Ry.,* 157 Mo. 621 [58 S. W. 32, 80 Am. St. Rep. 650].) . . . The benefits to be derived from its performance inure to the public through the added safety assured to individual person and property, and can affect the public in no other way. That the failure to observe the requirements of such a statute will, if the proximate cause of injury, support an action even by a trespasser is sustained by an abundance of authority. (*Richardson* v. *El Paso, C. G. etc. Co.,* 51 Colo. 440 [118 Pac. 982] ; *Erb* v. *Morasch,* 8 Kan. App. 61 [54 Pac. 323] ; *Alabama & Va. R. Co.* v. *Carter,* 77 Miss.

511 [27 So. 993] ; *Chicago, B. & Q. R. Co.* v. *Grablin,* 38 Neb. 90 [56 N. W. 796, 57 N. W. 522] ; *Keyser* v. *Grand Trunk Ry.,* 66 Mich. 390 [33 N. W. 867] ; *Meeks* v. *Southern Pac. Railway Co.,* 56 Cal. 513 [38 Am. Rep. 67] ; *South & North Alabama Ry. Co.* v. *Donovan, supra; Hayes* v. *Michigan C. R. Co., supra; Jackson* v. *Kansas C. etc. Ry. Co., supra.*)''

A similar law was enacted in the State of Colorado, and was construed in *Richardson* v. *El Paso C. G. etc. Co, supra.* The matter there was thus disposed of:

''On this state of facts it is contended that plaintiffs, as well as the deceased, were mere licensees, which did not entitle either of them to the use of the dump in the immediate vicinity of the shaft, which was about 110 feet from the house; that deceased was, therefore, a trespasser when upon the dump, and at the shaft, or, if the license extended to the immediate vicinity of the shaft, which was there when the house was constructed, the defendant violated none of its obligations growing out of the relationship of owner to licensee or trespasser. The proposition is wholly inapplicable. Plaintiffs' action is not based upon the ground of a failure on the part of the defendant to fulfill any obligation which it owed them or the deceased, because they occupied a house on the Australia claim, but upon the failure of the defendant to comply with a statutory requirement the purpose of which was to protect the public from injury, which neglect, they claim, caused the death of their son. . . . The failure to perform a statutory duty imposed by a valid statute under the police power of the state for the protection of the public is negligence *per se.* (*Platte & Denver C. & M. Co.* v. *Dowell,* 17 Colo. 376 [30 Pac. 68].) The party upon whom such duty is imposed must not only exercise reasonable care in the first instance to comply with the requirement of the statute, but must thereafter exercise such care in complying with the statutory requirements. (*Jones* v. *Flint & P. M. R. Co.,* 127 Mich. 198 [86 N. W. 838].)''

Appellants attempt to distinguish these last two cases because in each the plaintiffs happened to be children, but it clearly appears that these adjudications were not based upon the ''attractive nuisance'' theory, which would limit the recovery to children. The case of *Texas-Louisiana Power Co.* v. *Webster,* (Tex. Civ. App.) 59 S. W. (2d) 902 (affirmed,

Supreme Court, 127 Tex. 126 [91 S. W. (2d) 302]), also holds that under the circumstances we have here, the question of the status of the injured party cannot be urged in defense of the liability of the power company. By statute in the State of Texas it is provided, with reference to power lines, that "such lines shall be constructed upon suitable poles in the most approved manner, and maintained at a height above the ground of at least twenty-two feet". Plaintiff, while driving his automobile, ran out of gasoline. In search of a supply, he started toward a barn in a field adjoining the highway, and ran into a high voltage wire which had *sagged* to some three feet from the ground, due to damage done by a recent storm. The power company was the owner of an easement across the field, as explained by the court in the following portion of the opinion, which reviews exhaustively many cases upon all phases of this question:

"Obviously, one of the purposes of the quoted provision of the statute is to protect from injury all persons while using the premises in a manner consistent with the easement rights of the power company. What are these rights? The generally accepted doctrine is that the owner of the fee or proprietor of the premises has dominion over, and the right to use the land in a manner consistent with the reasonable enjoyment of the easement by its owner. (15 Texas Jur., p. 802, par. 59. See annotations 46 A. L. R. 1463–1465.) Appellant acquired the right of way through the Carter farm by a deed from the owner, granting the right of ingress and egress over adjacent lands to or from said right of way for the purpose of constructing, reconstructing, inspecting, controlling, hanging new wires on, maintaining, and removing said line and appurtenances, the right to relocate along the same general direction of said line, etc. Neither under this express grant, nor under the statute, did appellant have the right to prevent the owner of the fee, or proprietor, from using the ground under the power line so long as it was not put to a use inconsistent with the seasonable enjoyment of the easement. We do not think it can be said that, in attempting to pass under appellant's power line at the time and place in question, deceased was interfering with, or trespassing upon any right of the appellant; in fact, if deceased was trespass-

ing, it was upon the rights and premises of the owner or tenant.''

We now come to the instructions. It is first claimed that the court erred in giving an instruction upon the doctrine of *res ipsa loquitur*, upon the ground that such instruction was inapplicable. The fundamentals of that doctrine are as follows:

''In order that the doctrine of *res ispa loquitur* should apply to a given case, the plaintiff must have first shown by a preponderance of the evidence that certain conditions existed; amongst these conditions are the following: 1. That the general experience of mankind shows that the accident was such that it does not usually occur in the ordinary course of events without negligence upon the part of those in control, and 2. The person against whom the doctrine is sought to be invoked must have been in control of that instrumentality, and 3. The person invoking the doctrine must not be in a position to know the cause of the accident. . . . '' (*Parker* v. *Granger, Inc.,* 4 Cal. (2d) 668, 674, 675 [52 Pac. (2d) 226].)

As to the first-condition, it is clearly the general experience of mankind that telephone or other wires within several feet of the ground are not charged with a deadly current of electricity. As to the second, the instrumentalities—the electric current and the wire—were in control of the power company. As to the third condition, neither the plaintiff nor anyone else could tell exactly how the current got into the telephone wire. In making this reference to the facts, we, of course, are bound to accept the testimony of respondent to the effect that the deceased did nothing to cause a contact between the telephone wire and the power line, and to hold that the contention of the appellant that deceased jerked the wire, is untrue. The following quotation from 18 American Jurisprudence, 504, expresses our views, and clearly authorized the giving of the instruction:

''The mere introduction of the facts surrounding an injury from electricity, showing that such injury resulted from contact with live electric wires or other appliances when out of proper condition or out of their proper place, may suffice under the doctrine of *res ipsa loquitur* to raise a *prima facie* presumption that the electrical company having such appli-

ances in charge was negligent in the performance of its duty and to place upon the company the burden of overthrowing such presumption. Even though a fallen wire received the electricity by coming in contact with another wire upon which it sagged, the doctrine may apply. The exceedingly dangerous character of live electric wires lends force to the strict application of this rule of law to accidents occurring through contact with them under such circumstances; and unless the rule of *res ipsa loquitur* is applied, it is evident in a large number of cases that liability for the resulting injury will be escaped. It is within the power of electric companies at all times to show whether they have exercised due care in the erection and subsequent supervision and maintenance of their wires and appliances, while in many cases it would be almost impossible for the person injured to prove an actionable failure of duty in these things.''

■ Furthermore, an instruction on this doctrine was offered by *appellant* and given by the court. It is a fundamental rule that under such circumstances appellant cannot complain of a like instruction given by respondent. Appellant states that this rule is not applicable because the trial court announced that it ''intended to apply the doctrine''. No reference is made in the transcript as to when and where such announcement was made, and we do not feel that it is incumbent upon us to examine the hundreds of pages of such transcript to ascertain the facts.

■ The court gave the following instruction at request of respondent:

''You are instructed that from the very nature of its business, an electric company using highly charged wires owes a legal duty toward every person who, in the exercise of a lawful occupation in a place where he has a legal right to be and is liable to come into contact with the wires, to see that such wires are properly placed with reference to the safety of such persons.''

Other instructions defining the rights of a licensee were given. It is contended that in the first instruction the jury were told that the deceased had a lawful right to be upon the property, while in another they were told that deceased was not an invitee. The first instruction was not one on the facts, and consequently it did not, as appellant contends, have the

effect of telling the jury that decedent was lawfully upon the property. It was a mere statement of the law, and was therefore proper, and no conflict resulted.

Lastly, the court instructed the jury that a violation of the rule of the railroad commission constituted negligence as a matter of law. This correctly stated the law, as we have fully explained above.

Other points raised by appellant have either been disposed of without specific mention being made of them, or have been found so devoid of merit as to require no discussion.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 17, 1939, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 17, 1939.