[Civ. No. 30269. Fourth Dist., Div. Three. Aug. 22, 1983.]

MERWYN R. VANDER LIND et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
ATCHISON, TOPEKA AND SANTA FE RAILWAY SYSTEM et al.,
Real Parties in Interest.

CounsEL

Lillick, McHose & Charles, Daniel C. Minteer and Lawrence W. Kaye for Petitioners.

No appearance for Respondent.

Thomas I. McKnew, Jr., Howard P. Brody and John H. Ernster for Real Parties in Interest.

OPINION

**TROTTER, P. J.**—In this original proceeding petitioners ask us to conclude Public Utilities Code section 2106 authorizes an award of exemplary damages to parents whose minor daughter was struck and killed by real parties' speeding train. We decline.

FACTS

Fifteen-year-old Marcia Vander Lind was crossing the railroad tracks in the North Beach area of the City of San Clemente on December 11, 1980, when she was struck by defendants' Amtrak train. Death was instantaneous.

Petitioners filed their original action on July 13, 1981, seeking traditional wrongful death damages. When defendants' discovery responses admitted the train was speeding in excess of the 40-mile per hour limit established by the Public Utilities Commission plaintiffs amended their complaint to add two new causes of action. The first alleges a violation of the Public Utilities Commission order and seeks funeral expenses and damages for the loss of comfort, society, support and services decedent would have provided had she lived. The second incorporates the first, alleges the violation of the order was wilful and seeks exemplary damages. Both new causes of action are grounded exclusively on Public Utilities Code section 2106.

Defendants' motion to strike the second cause of action was granted January 10, 1983, on the ground exemplary damages are not recoverable in

California wrongful death actions. Because the language of Public Utilities Code section 2106 is similar to the corresponding Illinois statute, because neither state's wrongful death statute authorizes exemplary damages, and because Illinois has countenanced the recovery of exemplary damages under their public utilities statute on similar facts we issued the alternative writ. (See *In re Butler's Estate* (1947) 29 Cal.2d 644, 651 [177 P.2d 16, 171 A.L.R. 343]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 672, pp. 4585-4586.)

## DISCUSSION

Public Utilities Code section 2106 provides as follows: "Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. If the court finds that the act or omission was wilful, it may, in addition to the actual damages, award exemplary damages. An action to recover for such loss, damage, or injury may be brought in any court of competent jurisdiction by any corporation or person.

"No recovery as provided in this section shall in any manner affect a recovery by the State of the penalties provided in this part or the exercise by the commission of its power to punish for contempt."

██ Petitioners' argument proceeds in this fashion: (1) California decisions have recognized Public Utilities Code section 2106 creates a separate and distinct cause of action in anyone who has suffered "loss, damages, or injury" as a consequence of a utility's wrongful conduct (*California Adjustment Co.* v. *Atchison, T. & S.F. Ry. Co.* (1918) 179 Cal. 140, 145 [175 P. 682, 13 A.L.R. 274]; *Masonite Corp.* v. *Pacific Gas & Electric Co.* (1976) 65 Cal.App.3d 1, 7-8 [135 Cal.Rptr. 1]); (2) Petitioners' legal obligation to pay funeral expenses constitutes "loss, damages, or injury" within the meaning of the statute; (3) Public Utilities Code section 2106 does not distinguish between violations which result in personal injury and those which result in death (*Langazo* v. *San Joaquin L. & P. Corp.* (1939) 32 Cal.App.2d 678 [90 P.2d 825]); (4) California has traditionally allowed aggrieved parties to "supplement" wrongful death (Code Civ. Proc., § 377) causes of action with other statutory (Prob. Code, § 573) and common law (*Follansbee* v. *Benzenberg* (1954) 122 Cal.App.2d 466 [265 P.2d 183, 42 A.L.R.3d 832]) causes of action; (5) Exemplary damages are commonly awarded where wilful misconduct results in death (Prob. Code, § 573); (6) An award of exemplary damages on the second cause of action would not

contravene Code of Civil Procedure section 377 since that cause of action does not seek section 377 damages (i.e., pecuniary compensation for the child's loss); instead, its twofold function is to compensate petitioners for "loss, damages, or injury" (funeral expenses) they personally incurred and paid as a consequence of real parties' wilful and flagrant misconduct and to punish real parties for causing petitioners to suffer that economic loss; (7) This court should follow Illinois' lead and conclude Public Utilities Code section 2106 authorizes an exemplary damage award where a utility's wilful malfeasance, resulting in a child's death, causes economic injury to her parents. Although well conceived and facially compelling, petitioners' arguments fail.

The Illinois Supreme Court in 1978 held section 73 of their Public Utilities Act (Ill. Rev. Stat. 1969, ch. 111 2/3, par. 77) authorized an award of compensatory and exemplary damages to a widow whose husband was instantly killed when defendant's train struck the automobile in which he was a passenger. (*Churchill* v. *Norfolk & W. Ry. Co.* (1978) 73 Ill.2d 127 [383 N.E.2d 929].)[1] The widow's $45,000 wrongful death recovery was aug-

---

[1] The following portions of the *Churchill* opinion are germane to our inquiry: ". . . Defendant contends that even if section 73 of the Public Utilities Act recognizes a cause of action against a public utility for violations which result in personal injury, no cause of action exists when such violations result in death. We believe defendant has reached this anomalous conclusion by confusing plaintiff's causes of action under the Public Utilities Act (counts VII and VIII) with the wrongful death actions brought in counts I and II. The causes of action are separate and distinct.

"Counts VII and VIII were brought by plaintiff in her own behalf, not as a representative of the decedent as would be true in a wrongful death action. Plaintiff, on the basis of the financial injury she personally incurred, sought both compensatory and punitive damages directly under the Public Utilities Act. In order to avoid confusion with the wrongful death counts, counts VII and VIII should be regarded as actions brought against the defendant, whose wrongful and wilful violation of the Public Utilities Act, resulting in another's death, caused injury to plaintiff.

"Twenty years ago there would have been no such distinction inasmuch as the Wrongful Death Act was deemed to be the exclusive remedy against a defendant whose wrongful act resulted in another's death. (*Holton* v. *Daly* (1882), 106 Ill. 131, 140.) In 1960, that proposition was rejected because it was based on the anachronistic and misunderstood principle that there is no right of recovery after the death of an injured person. (*Saunders* v. *Schultz* (1960), 20 Ill.2d 301, 306, 170 N.E.2d 163; see *Murphy* v. *Martin Oil Co.* (1974), 56 Ill.2d 423, 426, 308 N.E.2d 583.) In *Saunders,* this court clarified the distinction. '[T]here is presently no legally cogent reason for denying a spouse the right to recover for medical or funeral expenses incurred on behalf of a mate who was wrongfully injured or killed. The rule denying such recovery originated as a corollary of the archaic common-law rule that there could be no recovery for the death of a human being, which is no longer the law. Moreover, under the present status of the law, a surviving spouse is personally liable under family expense statutes for the medical and burial expenses incurred on behalf of a husband or wife. Viewing the situation realistically, *this liability of the surviving spouse for such expenses constitutes very real damages.* Since that liability results from defendant's tortious conduct, it is only legally sound, and in accordance with basic negligence principles, that the burden of such damages should fall, not on the innocent victim, but upon the tortfeasor.' (Emphasis added.) *Saunders* v. *Schultz* (1960), 20 Ill.2d 301, 309-10, 170 N.E.2d 163, 168.

"The *Saunders* decision stands for the general proposition that actions independent of the

mented by Utilities Act awards of $1,600 (funeral expenses) and $600,000 (exemplary damages).

---

Wrongful Death Act may be brought against a defendant whose wrongful act resulted in another's death. *Saunders* itself permitted a spouse to recover, under the common law, for the medical and funeral expenses of her deceased husband—expenses for which she was liable under the family expense act (Ill.Rev.Stat. 1955, ch. 68, par. 15). In *Murphy v. Martin Oil Co.* (1974), 56 Ill.2d 423, 308 N.E.2d 583, which expressly overruled *Holton v. Daly,* this court held that the administrator of the decedent's estate could, independent of the Wrongful Death Act, bring an action for damages which would encompass decedent's lost wages, lost property, and pain and suffering endured during the nine days between injury and death.

"It is clear that, under the Public Utilities Act, plaintiff herein is a person 'affected' by defendant's wrongful act in that she individually suffered 'loss, damages or injury' in an amount which the jury determined to be $1,600. There is no indication that persons 'affected' by the wrongful act are only those who are physically injured as the proximate result of the wrongful act. Generally, a person 'affected' by a wrongful act is one who shows a direct personal interest in the matter as opposed to one whose interest is merely in common with that of the general public. The issue may be expressed as one of standing. Plaintiff has standing to bring her action against the defendant under the Public Utilities Act because defendant's wrongful act caused her to sustain precisely the 'very real damages' which this court countenanced in *Saunders.* Plaintiff's financial loss is independent of the fatal injury which her husband sustained and is to be compensated separately under the Act. Therefore, we hold that a spouse may recover under the Public Utilities Act those compensatory damages for which she becomes liable as a proximate result of defendant's wrongful act.

"The Act also provides that 'if the court shall find that the act or omission was wilful, the court may in addition to the actual damages, award damages for the sake of example and by the way of punishment.' (Ill.Rev.Stat. 1969, ch. 111⅔, par. 77.) Despite the plain language of the Act, defendant contends that, even if plaintiff is entitled to compensatory damages under the Act, she may not recover punitive damages. Defendant refers to various legislative enactments in an attempt to show that whenever the legislature contemplated a cause of action for death, it limited recovery to compensatory or pecuniary damages. (See Liquor Control Act (Ill.Rev.Stat. 1977, ch. 43, par. 135); Structural Work Act (Ill.Rev.Stat. 1977, ch. 48, par. 69); Wrongful Death Act (Ill.Rev.Stat. 1977, ch. 70, par. 2); and Coal Mining Act (Ill.Rev.Stat. 1977, ch. 96½, par. 1007).) Each of these enactments compensates the surviving spouse and heirs for the loss of life of the decedent. We reemphasize that plaintiff here is seeking punitive damages directly under the Public Utilities Act on the basis of the financial loss she personally incurred, not on the basis of the loss of life of her husband. Therefore, defendant is incorrect in its reliance upon the compensatory or pecuniary aspects of legislation directed toward compensating a spouse for loss of life. The Public Utilities Act expressly authorizes additional recovery by way of punitive damages *to any person affected* by defendant's wilful and wrongful conduct.

"It is not the intent of this court either to condemn or to advance the recovery of punitive damages in tort cases. Neither is it our function to rewrite the product of the General Assembly so as to deny punitive damages to a plaintiff whose compensable injury resulted from the very type of misconduct which the legislature hoped to eradicate by authorizing punitive recovery. The record in this case clearly reveals that the substantial punitive award was made to punish a defendant railroad company that had utterly disregarded pleas of local officials and citizens to remove its dangerous obstructions and to reassure the public that such indifference to public safety would not be repeated by the defendant or other railroad companies in the future. It would be incongruous indeed to preclude, as defendant suggests, the recovery of punitive damages by a plaintiff who has sustained compensable injury as a result of defendant's wilful and wrongful act merely because defendant's act also resulted in the death of plaintiff's husband. We therefore hold that both compensatory and punitive damages may be recovered against a defendant whose wrongful and wilful violation of the Public Utilities Act, resulting in another's death, caused injury to the plaintiff . . . . ''

Prior to 1960 Illinois allowed only a wrongful death action to compensate a survivor for losses arising from the tortious death of a decedent, even where the decedent survived for a period of time before succumbing to his injuries. Only where death was the result of other causes, or injuries other than those tortiously inflicted, would a "survival" action lie. (See *Holton v. Daly* (1882) 106 Ill. 131; *Murphy v. Martin Oil Co.* (1974) 56 Ill.2d 423 [308 N.E.2d 583] and authorities cited therein.) Further, the only compensable loss items the Illinois death statute has ever recognized are personal services (*Eggimann v. Wise* (1964) 56 Ill.App.2d 385 [206 N.E.2d 472]), support/earnings (*Willmann v. Jargon* (1962) 37 Ill.App.2d 380 [185 N.E.2d 702]) and instruction and moral and intellectual training (*Slone v. Morton* (1963) 39 Ill.App.2d 495 [188 N.E.2d 493]). It was not until 1974, when the *Murphy* court overruled *Holton,* that a decedent's personal injury damages could be recovered in an independent action against the tortfeasor whose conduct caused death. Against this backdrop the 1960 *Saunders'* decision (see fn. 1, *supra*) is as understandable as it was necessary in the Illinois wrongful death scheme; and once *Saunders* had established ". . . the general proposition that actions independent of the Wrongful Death Act may be brought against a defendant whose conduct resulted in another's death . . . ." (*Churchill, supra,* 383 N.E.2d at p. 934), the *Churchill* court's recognition of the Public Utilities Act as an additional independent basis for awarding medical and funeral expenses (and exemplary damages) might even have been "expected."

In contrast, Code of Civil Procedure section 377 has long allowed the recovery of funeral expenses in California wrongful death actions. Similarly, medical expenses incurred for treatment prior to death are compensable in survival actions. (Prob. Code, § 573.) Consequently, there is no *need* to recognize the existence of a statutory action independent of the wrongful death act to secure for petitioners a compensatory recovery that would otherwise remain beyond their reach.

Second, and of greater significance, is the historical reluctance of this state's Legislature and its courts to grant *any* relief in wrongful death cases not specifically authorized by Code of Civil Procedure section 377. Our courts have consistently held Code of Civil Procedure section 377 and the remedies contained therein completely occupy the field of wrongful death to the exclusion of any other action or remedy. (See *Kramer v. Market Street Railroad Company* (1864) 25 Cal. 434, 435-436; *Bond v. United Railroads* (1911) 159 Cal. 270 [113 P. 366]; *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]; *Justus v. Atchison* (1977) 19 Cal.3d 564, 573, fn. 9, 575 [139 Cal.Rptr. 97, 565 P.2d 122]. See also *Norman v. Murphy* (1954) 125 Cal.App.2d 95 [268 P.2d 178]; *Doak v. Superior Court* (1968)

257 Cal.App.2d 825, 835-836 [65 Cal.Rptr. 193, 27 A.L.R.3d 1362]; *Alvarez* v. *Wiley* (1977) 71 Cal.App.3d 599, 604 [139 Cal.Rptr. 550]; *Knowlton* v. *Pacific Southwest Airlines* (1981) 113 Cal.App.3d 152, 154 [169 Cal.Rptr. 668].) Equal protection challenges to Code of Civil Procedure section 377 classifications have been repeatedly rejected. (See *Justus* v. *Atchison, supra,* 19 Cal.3d at pp. 580-581 (no cause of action for the stillbirth of a fetus); *Reyna* v. *City and County of San Francisco* (1977) 69 Cal.App.3d 876, 881-883 [138 Cal.Rptr. 504] (same); *Grimshaw* v. *Ford Motor Co.* (1981) 119 Cal.App.3d 757, 835-836 [174 Cal.Rptr. 348] (no exemplary damages); *Georgie Boy Manufacturing, Inc.* v. *Superior Court* (1981) 115 Cal.App.3d 217, 224-226 [171 Cal.Rptr. 382] (same); *Nieto* v. *City of Los Angeles* (1982) 138 Cal.App.3d 464 [188 Cal.Rptr. 31] (meretricious spouse lacks standing to sue).)[2]

*Follansbee* v. *Benzenberg* (1954) 122 Cal.App.2d 466, 479 [265 P.2d 183, 42 A.L.R.2d 832] (relied upon by the *Saunders* court) held a wife who *personally* incurs and pays medical expenses for the care of her injured husband prior to his death has a separate common law right of action against the offending tortfeasor for recovery of those expenses. Another line of decisions, on traditional negligence analyses, countenances spousal and parental recoveries of emotional distress damages in circumscribed death situations. (See, e.g., *Krouse* v. *Graham* (1977) 19 Cal.3d 59 [137 Cal.Rptr. 863, 562 P.2d 1022] and *Nazaroff* v. *Superior Court* (1978) 80 Cal.App.3d 553 [145 Cal.Rptr. 657].) Petitioners contend these decisions (and Prob. Code, § 573) illustrate Code of Civil Procedure section 377 is not the exclusive civil remedy in California whenever a person dies at the hand of another and that exemplary damages are available to punish wrongdoers in appropriate death situations. Petitioners' observations, correct as far as they extend, fail to support their sweeping proposition Public Utilities Code section 2106 authorizes exemplary damage awards to persons *remotely* affected by tortious conduct causing death to another. Petitioners fail to appreciate the relationship between those diversified interests the common law and this state's Legislature have chosen to protect and the *proximity* of those interests (as it confers standing to exact exemplary punishment) to specific varieties of tortious behavior.

■ In other contexts our State Supreme Court has determined exemplary damages are generally allowed (absent statute) only to those *directly* injured by intentional tortious acts or omissions. (See *Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937, 942 [132 Cal.Rptr. 424, 553 P.2d 584]; *People* v.

---

[2]We note with great interest the recent passage and signing of Assembly Bill No. 444, 1983-1984 Regular Session, which authorizes the recovery of punitive damages in wrongful death or survival actions resulting from a homicide for which the civil defendant has been convicted of a felony.

*Superior Court* (1973) 9 Cal.3d 283, 287 [107 Cal.Rptr. 192, 507 P.2d 1400, 55 A.L.R.3d 191].) It is also the general rule in this state (and elsewhere) that a parent or spouse is not entitled to exemplary damages for injuries to a child or other spouse. (4 Witkin, Summary of Cal. Law (8th ed. 1973) Torts, § 853, p. 3146.) Only the injured child (by guardian ad litem) and the injured spouse, as *direct* victims of intended acts, have standing to command exemplary awards from culpable defendants. Those remotely affected, though themselves victims of the same acts and though equally entitled to assert violations of separately protected interests, are remitted to their compensatory recoveries. (See, e.g., *Grimshaw* v. *Ford Motor Co.* (1981) 119 Cal.App.3d 757 [174 Cal.Rptr. 348].) Should the direct victim succumb to his injuries his personal representative might then recover, on behalf of the victim's estate, those personal injury and exemplary damages which had been personal to the deceased during life. (Prob. Code, § 573.)[3]

*Follansbee, Krouse* and *Nazaroff, supra,* confirm the foregoing. The *Follansbee* court recognized a spouse's common law right to redress invasions of her own marital interests remotely arising from negligent conduct causing direct injury and death to her spouse (122 Cal.App.2d 466, 476-479). Although the decision is noteworthy because the court fashioned a common law remedy where recovery was considered unobtainable otherwise (see 122 Cal.App.2d at pp. 473-475), it cannot be viewed as an exception to the rule prohibiting recoveries not authorized by Code of Civil Procedure section 377 (and thus "precedent" for an exemplary award under Pub. Util. Code, § 2106) as urged by petitioners. ■ Our wrongful death statute simply precludes *heirs* from recovering damage items personal to the *deceased* whose personal injury/property damage action survives under the Probate Code in favor of his estate. The two statutes operate exclusively to compensate distinct interests separately. (See *Carr* v. *Duncan* (1949) 90 Cal.App.2d 282, 284 [202 P.2d 855].) The recognition of a third interest unique to Mrs. Follansbee *personally* offended neither statute and served to make whole each of the disparate interests separately damaged by the single negligent act.

■ The common law has similarly recognized the privacy and emotional tranquility interests of spouses and parents and has afforded those persons compensatory recoveries when negligent conduct, directly affecting another, has also violated their separate but more remote interests. (*Krouse* v. *Graham, supra,* 19 Cal.3d 59 and *Nazaroff* v. *Superior Court, supra,* 80 Cal.3d

---

[3]The lurid facts posited by one author (in which a defendant intentionally kills a parent's spouse or child *for the purpose* of inflicting emotional distress upon that parent) might indeed warrant the recovery of exemplary damages by the directly injured parent in his own right. However, those are not our facts.

553.) But we are aware of *no* reported California decision which has allowed a parent/spouse to *personally* recover exemplary damages at common law where the direct victim of an intentional tort was another.

■ We do not believe the Legislature enacted or amended Public Utilities Code section 2106 for the purpose of altering these results. Although section 2106 loosely authorizes exemplary damages to persons "affected.," we perceive the Legislature intended those damages be recovered (if at all) only by persons (or their Prob. Code, § 573 representatives) who are themselves the direct victims of a utility's wilful act or omission. A contrary conclusion and a literal application of the statute would expand the class of plaintiffs newly enfranchised to recover exemplary damages (upon proof of actual damages) beyond precedent and reason. Employers, parents of stillborn children and others remotely "affected" might obtain compensatory and exemplary awards against utilities on facts which have previously precluded even Code of Civil Procedure section 377 recoveries. (See, e.g., *Knowlton* v. *Pacific Southwest Airlines, Inc., supra,* 113 Cal.App.3d 152 and *Justus* v. *Atchison, supra,* 19 Cal.3d 564.) If it was not the conscious judicial purpose to have previously limited the class of exemplary damage recipients to direct victims of intentional torts, one salutory consequence of that de facto "privity" limitation has been the avoidance of double punishment for the same wrongful conduct. (See *Grimshaw* v. *Ford Motor Co., supra,* 119 Cal.App.3d at p. 835.) We believe justice is better promoted, consistent with due process and equal protection considerations, by instead expanding the *circumstances* under which *proper* parties plaintiff may recover exemplary damages. (See, e.g., *Taylor* v. *Superior Court* (1979) 24 Cal.3d 890 [157 Cal.Rptr. 693, 598 P.2d 854].)

Other factors also inveigh against a determination Public Utilities Code section 2106 is applicable to death cases so as to allow exemplary damage awards: (1) "Death" is not mentioned in the statute; yet the Legislature has, in other instances, meticulously inserted the word when "death" was intended (see, e.g., Civ. Code, § 1714.1, as amended by Stats. 1965, ch. 407, § 1, p. 1719; Pub. Util. Code, § 21404); (2) The history of Public Utilities Code section 2106 reveals it was never intended to provide an independent cause of action for wrongful death in California (see Stats. 1909, ch. 312, §§ 21, 38, pp. 505, 513; Stats. 1911, ch. 20, §§ 36, 43, pp. 33, 37; Stats. 1915, ch. 91, § 73, p. 165); instead, it was enacted primarily to provide a mechanism for enforcement of railroad commission rules and to prevent extortion and unjust discrimination; (3) In accord with general rules of statutory construction, the specific statutory language of Code of Civil procedure section 377 must prevail over the general language of Public Utilities Code section 2106. (See *Stafford* v. *L.A. etc. Retirement Board* (1954) 42 Cal.2d 795 [270 P.2d 12].) Public Utilities Code section

2106 has even been subordinated to more specific Public Utilities Code sections. (See, e.g., *Waters* v. *Pacific Telephone Co.* (1974) 12 Cal.3d 1, 4 [114 Cal.Rptr. 753, 523 P.2d 1161].)

Finally, *Langazo* v. *San Joaquin L. & P. Corp.* (1939) 32 Cal.App.2d 678 [90 P.2d 825] deserves comment. Petitioners rely on this case for the proposition Public Utilities Code section 2106 has been applicable to death cases for over 40 years. *Langazo* was ". . . an action brought to recover damages arising out of the death of Gilbert Langazo, the minor son of plaintiff. . . ." A judgment of $10,400 (remitted from $15,400) was affirmed and the California Supreme Court denied hearing.

Young Langazo was electrocuted when he touched defendant's sagging electrical wire. The $10,400 judgment was presumably for compensatory damages only (exemplary damages are not mentioned in the reported decision) and the issues on appeal concerned sufficiency of the evidence, alleged instructional errors and the duty of care the utility company owed Langazo (an alleged trespasser).

Code of Civil Procedure section 377 is not mentioned in the decision. However, the predecessor to Public Utilities Code section 2106 is referred to (32 Cal.App.2d 678 at pp. 690-691) as the source of a damage action for "any person who is injured through an omission to comply with any order of the commission . . . ." Although the opinion is not clear, the context of the quotation suggests the court relied on the violation of the commission's order to establish negligence per se. We view *Langazo* as a "silent" Code of Civil Procedure section 377 decision in which [2106] was used to show only the wrongful nature of the minor's death. Here, real parties concede section 2106 may be used to establish a breach of duty and as a basis for compensatory damages.

Writ denied. Alternative writ discharged.

Crosby, J., and Sonenshine, J., concurred.

Petitioners' application for a hearing by the Supreme Court was denied December 1, 1983. Bird, C. J., and Mosk, J., were of the opinion that the application should be granted.