[No. G001933. Fourth Dist., Div. Three. Dec. 18, 1986.]

JOE A. GARCIA, Plaintiff and Appellant, v.
ROCKWELL INTERNATIONAL CORPORATION,
Defendant and Respondent.

**1558**

**COUNSEL**

Greene, O'Reilly, Broillet, Paul, Simon, McMillan, Wheeler & Rosenberg, Charles B. O'Reilly and Steven J. Wilson for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Robert S. Warren, Stephen E. Tallent, William E. Wegner, John J. Waller, Jr., and James R. Buckley for Defendant and Respondent.

**OPINION**

**TROTTER, P. J.**—Plaintiff, Joe A. Garcia, appeals from a summary judgment in favor of defendant, Rockwell International Corporation. Garcia brought suit alleging Rockwell, Garcia's employer, wrongfully suspended him without pay and demoted him as a retaliatory measure because Garcia revealed Rockwell's mischarging activities to NASA's Inspector General.

In support of its motion for summary judgment, Rockwell presented the following pertinent facts: Garcia had been an employee of Rockwell since October 25, 1960. From October 1977 to April 21, 1980, Garcia was a supervisor in manufacturing operations at the Rockwell facility in Seal Beach. As supervisor, Garcia kept the time records for employees in his department. Ordinarily each employee's time was charged to a particular "charge number" representing the project the employee was actually working on. Garcia mischarged the time of his employees to projects they were not working on.

In July 1979, Garcia spoke to a representative of the National Aeronautics and Space Administration (NASA) Inspector General's office. Garcia told the representative that he had been ordered to mischarge his employees' time by his supervisor, Ron Ciotta. Ciotta was the only person at Rockwell who told Garcia to mischarge his employees' time. Garcia never discussed or verified Ciotta's alleged order to mischarge with any other person in Rockwell's management. Ciotta denied that he gave any such instructions. Garcia knew mischarging was improper.

On November 6, 1979, Garcia met with Rockwell officials and told them he had spoken to an official from NASA in July 1979. Garcia did not tell Rockwell officials about his own mischarging activities at the November meeting, but stated he had heard of mischarging on the Shuttle program by another supervisor, Delfino Ariaz, and had reported this to NASA.

On March 13, 1980, Garcia again met with Rockwell officials. At this meeting he signed a statement admitting he had personally engaged in mischarging. On March 17, Garcia was placed on leave with pay and then suspended without pay on April 28. On October 10, Rockwell offered to reinstate Garcia in a nonsupervisory position with no reduction in pay at Rockwell's Downey, California facility. Garcia returned to work on October 28, 1980.

Garcia submitted his own declaration in opposition, as well as the declaration of his attorney. Rockwell raised evidentiary objections to the two declarations which were sustained by the trial court. The evidence remaining showed that in 1977, Ciotta, Garcia's immediate supervisor, instructed Garcia to mischarge on Air Force contracts. He was told "to charge cost overruns from one 'fixed-price' contract, where an excess in allotted funds existed." He was told to accomplish this "by giving inaccurate lead numbers to employees in the Manufacturing Department." Garcia also stated, "That prior to these instructions from Ron Ciotta, I was aware of and had observed mischarging of the nature I had been instructed to engage in throughout my department." Garcia questioned Ciotta on several occasions in 1977 about "the propriety and purpose of the mischarging," but Ciotta ignored his questions and told him to follow orders. In July 1979, Garcia reported Rockwell's mischarging to NASA officials. He was suspended with pay on March 13, 1980, and was told the suspension would last one week. In late April or early May, Garcia phoned Rockwell to inquire about his status. He was told he had been suspended without pay on April 28, 1980. Garcia states, "In July of 1980 I contacted an attorney and filed the instant action for wrongful discharge . . . . [¶] That the basis for my lawsuit against Rockwell is my belief that I was terminated for reporting the mischarging to NASA officials."

■ As was said by the California Supreme Court in *Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842 at pages 851-852 [94 Cal.Rptr. 785, 484 P.2d 953]: "We have summarized on a number of occasions the well-established rules governing summary judgment procedure. (Code Civ. Proc., § 437c.) 'The matter to be determined by the

trial court in considering such a motion is whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself. Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts.' [Citations.]" (Fn. omitted.) ■ "When the defendant is the moving party, his task is to negate completely an essential element of plaintiff's case or to establish a complete defense. [Citation.] This task is limited to addressing those issues or theories of liability raised in plaintiff's complaint." (*Fireman's Fund Ins. Co.* v. *City of Turlock* (1985) 170 Cal.App.3d 988, 994 [216 Cal.Rptr. 796].) A defendant who files a summary judgment motion must bear the burden of negating every alternative theory of liability presented by the pleadings. (*Bell* v. *Industrial Vangas, Inc.* (1981) 30 Cal.3d 268, 271, fn. 1 [179 Cal.Rptr. 30, 637 P.2d 266].) On the other hand, plaintiff cannot rely on his pleadings, even if verified, "but must make an independent showing that he has sufficient proof of matters alleged to raise material issues of fact. [Citation.]" (*Reid* v. *State Farm Mut. Auto. Ins. Co.* (1985) 173 Cal.App.3d 557, 570 [218 Cal.Rptr. 913].)

■ In his complaint Garcia alleged retaliatory disciplinary action by his employer, Rockwell. In support of the summary judgment, Rockwell contends a tort claim for damages under *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314] cannot be based on such an allegation as a matter of law, because a *Tameny* cause of action arises only after a retaliatory firing or termination of employment. In the alternative, Rockwell argues that the undisputed facts show it fired Garcia for cause because he engaged in mischarging, not in retaliation for his revelations to NASA.

In *Tameny,* the plaintiff's former employer, Atlantic Richfield Co., fired him after 15 years of service because he refused to participate in an illegal scheme to fix retail gasoline prices. The California Supreme Court reversed a trial court order sustaining a demurrer to plaintiff's tort cause of action. The court held an employee discharged for refusing to engage in illegal

conduct at his employer's request may bring a tort action for wrongful discharge. The court stated, ". . . the relevant authorities both in California and throughout the country establish that when an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." (*Id.*, at p. 170.)

Rockwell claims application of the *Tameny* rationale to a claim of retaliatory disciplinary action, falling short of an actual discharge, presents a case of first impression in California, and that appears to be correct. Neither counsel's nor our independent research has revealed a case involving a suspension without pay or other disciplinary action, other than discharge. However, we see no reason why the rationale of *Tameny* should not be applicable in a case where an employee is wrongfully (tortiously) disciplined and suffers damage as a result of, not breach of a contract term, but rather, breach of a duty growing out of the contract.

The court in *Tameny* relied heavily on *Petermann* v. *International Brotherhood of Teamsters* (1959) 174 Cal.App.2d 184 [344 P.2d 25]. In that case an employee was discharged because he refused to follow his employer's instructions to testify falsely under oath before a legislative committee. In *Tameny* the court stated, "As the *Petermann* case indicates, an employer's obligation to refrain from discharging an employee who refuses to commit a criminal act does not depend upon any express or implied '"promise[s] set forth in the [employment] contract"' [citation], but rather reflects a duty imposed by law upon all employers in order to implement the fundamental public policies embodied in the state's penal statutes." (*Tameny* v. *Atlantic Richfield Co.*, *supra*, 27 Cal.3d at p. 176.)

■ There is no question public policy forbids retaliatory action taken by an employer against an employee who discloses information regarding an employer's violation of law to a government agency. Labor Code section 1102.5, subdivision (b) provides, "No employer shall retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or violation or noncompliance with a state or federal regulation."[1]

■ A duty imposed by law forbids retaliatory action similar to that alleged in Garcia's complaint, hence, the wrong alleged is "ex delicto,"

---

[1]Labor Code section 1102.5 was enacted in 1984, after the retaliatory action alleged by plaintiff in this case. However, in our view, the Labor Code section merely enunciated already existing public policy.

not "ex contractu." (See *Tameny* v. *Atlantic Richfield Co., supra,* 27 Cal.3d at p. 175.) The same wrongful conduct is involved whether the retaliation inflicted is a six-month suspension without pay or a discharge. The only difference is the extent of the damage suffered. We also note that Rockwell did not offer to reinstate Garcia until after he filed this lawsuit. A ruling in favor of Rockwell on this issue would encourage employers to offer reinstatement after the imposition of retaliatory punitive measures to avoid a plaintiff's legitimate legal action. Accordingly, we hold that an employee can maintain a tort claim against his or her employer where disciplinary action has been taken against the employee in retaliation for the employee's "whistle-blowing" activities, even though the ultimate sanction of discharge has not been imposed.

■ We also conclude that a triable issue of fact exists regarding the reason Rockwell suspended Garcia without pay. The facts proved showed that Garcia engaged in mischarging, that he did so under orders from his supervisor, Ron Ciotta, that Ciotta denied giving such orders, that Garcia reported the mischarging to NASA, that Garcia told Rockwell he had reported the mischarging to NASA, that Garcia admitted mischarging to Rockwell, and that Rockwell suspended Garcia without pay. There is no direct evidence either that Rockwell disciplined Garcia for cause because he mischarged, or that Rockwell disciplined Garcia in retaliation for revealing the mischarging at Rockwell to NASA. Both conclusions are, however, reasonable, albeit conflicting, inferences from the facts proved.

Code of Civil Procedure section 437c, subdivision (c), provides in pertinent part as follows: "In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court, and all inferences reasonably deducible from such evidence, *except summary judgment shall not be granted by the court based on inferences reasonably deducible from such evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact.*" (Italics added.) Here, there are conflicting inferences reasonably deducible from the facts, hence, summary judgment was inappropriate. As was said by the court in *Khanna* v. *Microdata Corp.* (1985) 170 Cal.App.3d 250, at page 263 [215 Cal.Rptr. 860], "The true reasons for an employee's dismissal, and whether they show bad faith rather than dissatisfaction with services and reflect intention to deprive the discharged employee of the benefits of the contract, are evidentiary questions most properly resolved by the trier of fact. [Citations.]" (See also *Rulon-Miller* v. *International Business Machines Corp.* (1984) 162 Cal.App.3d 241, 250 [208 Cal.Rptr. 524].)

The judgment is reversed.

Wallin, J., and Sonenshine, J., concurred.

A petition for a rehearing was denied January 14, 1987, and respondent's petition for review by the Supreme Court was denied April 16, 1987. Kaufman, J., did not participate therein.