[No. H002925. Sixth Dist. Aug. 30, 1988.]

SAUNDRA K. ANDERSEN et al., Plaintiffs and Appellants, v. PACIFIC BELL, Defendant and Respondent.

[No. H003159. Sixth Dist. Aug. 30, 1988.]

SAUNDRA K. ANDERSEN et al., Plaintiffs and Respondents, v. PACIFIC BELL, Defendant and Appellant.

**COUNSEL**

David S. Sabih for Plaintiffs and Appellants and Plaintiffs and Respondents.

Joe C. Creason, Jr., James B. Young, C. Douglas Floyd, Sabrina A. McCarthy and Pillsbury, Madison & Sutro for Defendant and Respondent and Defendant and Appellant.

## Opinion

BRAUER, J.—Plaintiffs, who are customer service representatives for defendant Pacific Bell, sued for arbitrary discrimination under Public Utilities Code section 453, subdivision (a), and constructive wrongful termination. The trial court granted Pacific Bell's motion for summary judgment. We affirm the judgment, but reverse the order denying statutory costs to Pacific Bell.[1]

### Standard of Review

The Supreme Court has summarized "the well-established rules governing summary judgment procedure" as follows: " ' "The matter to be determined by the trial court in considering such a motion is whether the defendant . . . has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself. Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of [the] opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion." ' " (*Empire West* v. *Southern California Gas Co.* (1974) 12 Cal.3d 805, 808 [117 Cal.Rptr. 423, 528 P.2d 31], quoting from *Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851-852 [94 Cal.Rptr. 785, 484 P.2d 953]; see Code Civ. Proc., § 437c.)

### Facts

Our statement of the relevant facts is drawn from the undisputed facts set out in the affidavits and other evidence submitted in connection with the motion for summary judgment.

From sometime in 1985 until May 1986, Pacific Bell directed its customer service representatives to engage in marketing practices that the Public Utilities Commission (Commission) later enjoined.[2] These practices includ-

---

[1] Appeal number H002925 is plaintiffs' appeal from the grant of Pacific Bell's motion for summary judgment. Appeal number H003159 is Pacific Bell's separate appeal from the order denying costs.

[2] We discuss Pacific Bell's marketing practices and the proceedings before the Public Utilities Commission only to explain the factual background of this lawsuit. The Commission's

ed offering 30-day free trials of enhanced telephone services without the Commission's prior approval, selling basic and enhanced services as part of a package without disclosing to customers that basic service was available separately at lower cost, improperly applying criteria for the establishment of credit, improperly applying procedures for administering the Moore Universal Telephone Service Act (which concerns low-cost "Lifeline" service), and referring to services by incorrect and possibly confusing names in communications with customers.

In an opinion accompanying its cease-and-desist order, the Commission stated that Pacific Bell's marketing practices "mask[ed] the basic rate, thereby causing ratepayers unwittingly to pay more for telephone service than they otherwise would, or worse, to go without such service at all." The Commission specifically found that Pacific Bell had violated Public Utilities Code section 532 as well as various tariff rules and general orders of the Commission. Pacific Bell revised its marketing practices in response to the Commission's order.

The 23 plaintiffs whose claims are before us, with one exception,[3] were and still are employed by Pacific Bell as customer service representatives. Among other things, service representatives take customers' orders for telephone service. Some plaintiffs objected to Pacific Bell's marketing practices as unethical and dishonest. Pacific Bell's management, however, established sales goals, wrote marketing scripts to be read to customers, and adopted other procedures to ensure service representatives' compliance. The high sales goals could be met only by following the company's marketing directives. Pacific Bell's management personnel, including plaintiffs' direct supervisors, enforced the company's directives with threats of discipline and discharge. Nevertheless, some plaintiffs still refused to comply with the marketing directives in situations where compliance raised ethical problems. In addition, some plaintiffs looked for other jobs but found that other employers paid much less than Pacific Bell for comparable work.

Although all plaintiffs claim to have suffered emotional distress, none was discharged. Moreover, only one plaintiff, Carol Lydon, was actually disciplined. Pacific Bell suspended Lydon for one day without pay for failure to meet sales goals but two months later rescinded its disciplinary action,

jurisdiction over the regulation of public utilities is exclusive (Pub. Util. Code, § 1759), and we therefore do not purport independently to evaluate Pacific Bell's compliance with regulatory law.

[3] Plaintiff Shirley Victor resigned her position with Pacific Bell in November 1986 because her husband was transferred to Oregon.

The court's order granting summary judgment did not apply to plaintiffs Karen Conger and Cynthia Sherwood. Thus, the claims of these two plaintiffs (with whom Pacific Bell appears to have settled) are not before us.

reimbursed her lost pay, and removed derogatory material from her personnel file.

Plaintiffs' original complaint included causes of action for (1) breach of the covenant of good faith, (2) constructive wrongful termination, (3) constructive wrongful termination in violation of public policy, (4) intentional infliction of emotional distress, (5) intentional violation of statute, (6) and civil conspiracy. When Pacific Bell removed the case to federal court, however, plaintiffs voluntarily dismissed all causes of action except their third and fifth in order to eliminate any possibility of federal jurisdiction. The federal court then remanded the case. Thus, the only causes of action before us are "constructive wrongful termination in violation of public policy" and "intentional violation of statute" (*i.e.,* Pub. Util. Code, § 453, subd. (b).)[4]

### A. *Constructive Wrongful Termination*

Since no plaintiff has quit or been discharged, the name "constructive wrongful termination" does not accurately describe plaintiffs' purported cause of action. But that simple observation does not dispose of the appeal, since plaintiffs' allegations and arguments make it clear that they are attempting to state a cause of action for retaliatory discipline under *Garcia* v. *Rockwell Internat. Corp.* (1986) 187 Cal.App.3d 1556 [232 Cal.Rptr. 490].

The court in *Garcia* held that "an employee can maintain a tort claim against his or her employer where disciplinary action has been taken against the employee in retaliation for the employee's 'whistle-blowing' activities, even though the ultimate sanction of discharge has not been imposed." (*Id.* at p. 1562.) *Garcia* extended *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314], in which the Supreme Court held that a discharge was wrongful because it was motivated by retaliation for an employee's refusal to participate in illegal activities ordered by the employer. In essence, *Garcia* applies *Tameny* to cases involving retaliatory disciplinary action other than discharge.

That Pacific Bell ordered its employees to use marketing techniques later found to be unlawful[5] does not in itself give the employees causes of action under *Garcia* or *Tameny*. Even reading those decisions very broadly,

---

[4]Public Utilities Code section 453, subdivision (b), which prohibits arbitrary discrimination by a public utility, is discussed below.

Plaintiffs also alleged in their complaint that Pacific Bell violated Public Utilities Code section 761. That statute, however, which delegates rulemaking authority to the Commission, does not appear to have anything to do with this case. Plaintiffs no longer argue that section 761 gives them a cause of action.

[5]In this case there is no allegation of "whistle-blowing," i.e., that employees reported company activities to regulatory agencies.

a plaintiff must also allege that he or she was actually disciplined. But except for Carol Lydon, no plaintiff makes such a claim. Plaintiffs who were not disciplined have no causes of action under any plausible interpretation of those cases.

■ As mentioned, Carol Lydon is in a slightly different position. According to her affidavit she was actually suspended for one day, although Pacific Bell later rescinded that disciplinary action. Thus, we must determine whether there are triable issues of material fact with respect to the other elements of a cause of action for retaliatory discipline.

The issue of damage is the major obstacle to Lydon's claim. Pacific Bell's rescission of its disciplinary action left her with no economic damage. Indeed, Lydon did not even allege that she suffered damages other than emotional harm.[6] Accordingly, if she can state a cause of action it must be predicated solely on emotional harm—and not as a separate cause of action[7] but as an element of damage for retaliatory discipline.

■ To be sure, a plaintiff can sometimes recover damages for mental injuries through a cause of action other than intentional infliction of emotional distress. But such damages are not available in every case, since courts must apply limiting principles designed to ensure the "validity of the claim." (*Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 926 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518].) The Supreme Court articulated the fundamental limiting principle in *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173]: in order to recover damages for emotional distress, a plaintiff must have substantial damages apart from emotional distress.[8] (*Id.* at p. 434; see also *Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d 916, 927; *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 578-580 [108 Cal.Rptr. 480, 510 P.2d 1032].)
■ "The principal reason for limiting recovery of damages for mental distress is that to permit recovery of such damages would open the door to fictitious claims, to recovery for mere bad manners, and to litigation in the field of trivialities." (*Crisci* v. *Security Insurance Co., supra,* 66 Cal.2d at p. 434.) On the other hand, where "the claim is actionable and has resulted

---

[6] Only plaintiffs Conger and Sherwood, whose claims are not before us (see fn. 3, *ante*), alleged that they "have become unemployed, and have either been unable to find satisfactory work of a similar kind, or have taken an employment that provides diminished salary and benefits, and have suffered severe emotional distressed [*sic*] and physical illness . . . ."

[7] The reason Lydon cannot state a separate cause of action for intentional infliction of emotional distress is that she voluntarily dismissed that cause of action while this case was in federal court on removal.

[8] Another circumstance which can validate a claim for emotional distress is the presence of physical injury. (*Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d at p. 916.) Lydon has not alleged physical injury.

in substantial damages apart from those due to mental distress," the danger of fictitious claims is less acute and recovery is permissible. (*Ibid.*)

■ The first step in analyzing a motion for summary judgment is to "identify the issues framed by the pleadings since it is these allegations to which the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading." (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203].) ■ In view of Lydon's inability to allege substantial damages apart from emotional distress (which her affidavit confirmed), there was no triable issue of fact with respect to this prerequisite for recovery. (*Crisci* v. *Security Insurance Co., supra,* 66 Cal.2d at p. 434.) Thus, nothing further was necessary to demonstrate that no factual basis for relief existed.

### B. *Public Utilities Code Section 453, Subdivision (a)*

■ Plaintiffs also argue that they have stated causes of action under Public Utilities Code section 453, subdivision (a). Their argument, however, appears to be based on a misinterpretation of that statute.

■ The Supreme Court has called section 453, subdivision (a), an "explicit statutory prohibition of discrimination by a public utility . . . ." (*Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 475 [156 Cal.Rptr. 14, 595 P.2d 592].) Although the statute does not use the term "discrimination," its import is clear: "No public utility shall, as to rates, charges, service, facilities, or in any other respect, make or grant any preference or advantage to any corporation or person or subject any corporation or person to any prejudice or disadvantage." (Pub. Util. Code, § 453, subd. (a).) This broad language prohibits many forms of arbitrary discrimination, including rate discrimination (e.g., *United States Steel Corp.* v. *Public Utilities Com.* (1981) 29 Cal.3d 603, 610-611 [175 Cal.Rptr. 169, 629 P.2d 1381]) and discrimination in hiring (see *Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co., supra,* 24 Cal.3d at pp. 475-486). But unless discrimination in some form is present, section 453, subdivision (a), simply does not apply. (Cf. *Langley* v. *Pacific Gas & Elec. Co.* (1953) 41 Cal.2d 655, 662 [262 P.2d 846].)

■ In this case, Pacific Bell gave the same marketing directives to all of its service representatives. Thus, one must ask, where is the discrimination? To quote their brief, plaintiffs argue that "Pacific made a conscious decision to use service representatives, *and service representatives only,* through which [*sic*] to carry out its overarching [*sic*] scheme to increase

corporate revenue." (Italics in original.) In terms less flamboyant, Pacific Bell gave its marketing directives only to marketing personnel. But this argument does not identify discrimination among similarly situated persons; it merely attacks the division of labor. One might as well argue that a taxicab company has arbitrarily discriminated by requiring taxi drivers, and taxi drivers only, to drive unsafe taxicabs. To be sure, some law may have been broken, but discrimination is not a relevant or helpful concept. Since all service representatives have been treated in the same way, there is no basis for a claim of discrimination and no cause of action under section 453, subdivision (a).

In view of their total failure to allege a claim within the purview of section 453, subdivision (a), we need not evaluate Pacific Bell's contention that its service representatives lack standing to sue because they were not the direct victims of its marketing practices. (See *Vander Lind* v. *Superior Court* (1983) 146 Cal.App.3d 358, 367 [194 Cal.Rptr. 209].)

C. *Pacific Bell's Appeal From the Trial Court's Order Denying Costs*

■ After the trial court granted the motion for summary judgment, Pacific Bell filed a memorandum of costs in the amount of $22,103.41. All but $14 of this amount represented the cost of transcribing the depositions of plaintiffs whose claims had been dismissed as a result of the summary judgment.[9] Although the Code of Civil Procedure gave Pacific Bell, as the prevailing party, an absolute right to recover these costs,[10] the trial court refused to award them. Pacific Bell has separately appealed this order.

Explaining its decision, the trial court stated: "Although Pacific is the prevailing party as to [the dismissed] plaintiffs (Code Civ. Proc., § 1032, subd. (a)(4)), it is possible that the remaining plaintiffs[11] may be prevailing parties (*id.*) in their action against Pacific, and that they may be entitled to recover the costs of the depositions of the 22[12] dismissed plaintiffs, if said plaintiffs testify at trial." The court erred. Pacific Bell's statutory right as

---

[9] Items allowable as costs include "[t]aking, videotaping, and transcribing necessary depositions including an original and one copy of those taken by the claimant and one copy of depositions taken by the party against whom costs are allowed, and travel expenses to attend depositions." (Code Civ. Proc., § 1033.5, subd. (a)(3).)

[10] "Except as otherwise expressly provided by statute, a prevailing party is entitled *as a matter of right* to recover costs in any action or proceeding." (Code Civ. Proc., § 1032, subd. (b) [italics added].) " 'Prevailing party' includes . . . a defendant as against those plaintiffs who do not recover any relief . . . ." (Code Civ. Proc., § 1032, subd. (a)(4).)

[11] The "remaining plaintiffs" to whom the court referred were Conger and Sherwood. (See fns. 3 & 6, *ante.*)

[12] Although 23 plaintiffs' claims were dismissed, Pacific Bell claimed costs for only 22 depositions.

prevailing party to recover its own costs from the dismissed plaintiffs is not dependent on any hypothetical, future right the remaining plaintiffs might have to recover their different costs.

## DISPOSITION

In appeal number H002925, the judgment is affirmed. In appeal number H003159, the order denying Pacific Bell's costs is reversed. The case is remanded to the superior court with directions to award costs, including costs on both appeals, to Pacific Bell.

Agliano, P. J., and Chapman, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.