**John P. ELLIOTT, Jr., Plaintiff—Appellant,**

v.

**WACKENHUT CORRECTIONS CORPORATION; White Corporation; Black Corporation; Red Company, Defendants—Appellees.**

No. 02–15049.
D.C. No. CV–00–05479–LJO.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 10, 2003.

Decided Feb. 20, 2003.

Before CANBY, O'SCANNLAIN and W. FLETCHER, Circuit Judges.

## MEMORANDUM*

Elliott appeals the magistrate judge's grant of summary judgment to Wackenhut Corrections Corp. ("WCC"). Elliott sent several letters to government officials complaining about mismanagement at the WCC prison where he worked. He was subsequently suspended without pay and he was never allowed to return to work. Because we hold that a jury could find that Elliott's letters included content protected under Cal. Lab.Code § 1102.5, we reverse and remand.

1. As an initial matter, we must determine what claims are before us. In his complaint, Elliott alleged that WCC's action against him violated the "public policy ... of the State of California, specifically Labor code section 1102.5." Elliott subsequently moved to amend his complaint to include claims under California Labor Code §§ 1101, 1102, and 6310. The magistrate judge denied his motion to amend. On appeal, Elliott has not argued that the magistrate judge erred by denying leave to amend, and Elliott has therefore waived those arguments. *See* Fed. R.App. P. 28(a)(8); *Williams v. Woodford,* 306 F.3d 665, 684 n. 5 (9th Cir.2002). Thus, on remand, Elliott cannot proceed based on independent claims that WCC's actions violated §§ 1101, 1102, or 6310; his argument that WCC violated § 1102.5 is what remains. On the other hand, Elliott is free to argue to the jury, as part of his claim under § 1102.5, that the information in his letters pointed to possible violations of those sections.

2. Elliott argues that the magistrate judge abused his discretion by ruling that Elliott was judicially estopped from pursuing a theory based on constructive discharge. We need not settle this matter because whether WCC's action is called a "constructive discharge" should not affect the resolution of this case. To succeed in a retaliation claim, an employee must show that his or her employer took an adverse employment action against him or her in retaliation for a protected activity. Constructive discharge is one type of adverse employment action. A showing of constructive discharge does not itself establish an employer's liability—it simply satisfies one element of a retaliation claim. *See Turner v. Anheuser–Busch, Inc.,* 7 Cal.4th 1238, 1251, 32 Cal.Rptr.2d 223, 876 P.2d 1022 (1994). If the facts alleged by Elliott are true, that element is satisfied.

Elliott alleged that he was suspended without pay, that WCC did not for many months notify him about the status of his employment, and that WCC never allowed him to return to work. It is clear that these alleged actions qualify as an "adverse employment action" under § 1102.5. *See Garcia v. Rockwell Int'l Corp.,* 187 Cal.App.3d 1556, 1562, 232 Cal. Rptr. 490 (1986). Moreover, if Elliott's allegations are true, his employment with WCC was permanently terminated. Whether WCC's action is termed a "constructive discharge" or simply a "dis-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

charge" is irrelevant. Assuming the truth of Elliott's factual allegations, Elliott was effectively fired.

■ 3. Section 1102.5 says that an employer cannot retaliate against an employee "for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute [or regulation]." The magistrate judge ruled as a matter of law that, even if he was fired for sending the letters to government officials, the letters were not protected by § 1102.5. We disagree.

Elliott's letters certainly included some content not protected by § 1102.5. But the letters also included information that a jury could conclude Elliott reasonably believed disclosed a violation of federal or state law. In his letters, Elliott claimed, among other things, that WCC covered up an inmate escape; that WCC engaged in fraud; that WCC mishandled incident reports; that WCC allowed sexual and physical assaults and drug use by inmates; that WCC allowed inmates to possess weapons; that WCC retaliated against him for seeking various changes; that WCC was not following the agreement it had reached with the government; that inmates assaulted other inmates; and that WCC allowed officers to carry weapons illicitly in public.

Elliott might have reasonably believed that some of his reports constituted disclosure of illegal activities. Elliott might have reasonably believed, for example, that WCC's failure to comply with its contract with the government constituted a violation of law. He might have reasonably believed that his letters disclosed vio-

lations of federal regulations governing prisons. He might have reasonably believed that his letters disclosed corruption that violated federal and state laws regarding commercial bribery and corruption. In short, Elliott might have had a reasonable cause to believe that his letters included information about violations of federal and state laws. A jury could conclude that Elliott did have such reasonable cause to believe, and that his disclosures were therefore protected by § 1102.5.

A question of fact also remains as to whether WCC's actions against Elliott were in retaliation for protected disclosures.

REVERSED and REMANDED.