Filed 3/25/21  Melchionne v. Farmers Insurance Exchange CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| ANTHONY MELCHIONNE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>FARMERS INSURANCE EXCHANGE,<br><br>    Defendant and Respondent. | B302326<br><br>(Los Angeles County<br>Super. Ct. No. BC683538) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Teresa A. Beaudet, Judge.  Affirmed.

Robert W. Thompson, Kirk D. Holman (*pro hac vice*) and Aiman Dvorak (*pro hac vice*) for Plaintiff and Appellant.

Tharpe & Howell, Christopher S. Maile and Eric B. Kunkel for Defendant and Respondent.

\* \* \* \* \* \*

A long-time employee of an insurance company was demoted as part of an organizational restructuring. He thereafter sought, but did not get, two promotions because he did not meet the geographical eligibility requirement for those jobs. He is a white man in his 50s. He sued the company, claiming that he was the victim of race, gender, and age discrimination as well as retaliation. The trial court granted summary judgment for the company. We independently agree that summary judgment was appropriate, and affirm the dismissal of his lawsuit.

## FACTS AND PROCEDURAL BACKGROUND

### I.  Facts

#### A.  *Demographics*

Anthony Melchionne (plaintiff) is a 55-year-old white man. He lives in Olathe, Kansas.

#### B.  *Work history*

In September 1989, plaintiff started working for the company that is now Farmers Insurance Exchange (Farmers).

##### 1.  *Demotion in 2016*

In 2015, plaintiff was working as a Director in the business unit within Farmers called Claims Shared Services. During plaintiff's tenure, plaintiff's boss was initially Rob Howard (Howard) and then Mitchell Crawford (Crawford). While in that unit, plaintiff's performance was "successful," although he had several areas that still needed improvement.

In late 2015, Crawford did a business plan evaluation and concluded that the Claims Shared Services unit was over-staffed; Crawford proposed a restructuring of the unit that shifted several of the employees who reported to plaintiff to other reporting hierarchies and consequently necessitated the elimination of

2

plaintiff's unnecessary "Director" position. A Farmers human resources employee signed off on the proposed restructuring.

In mid-January 2016, Crawford and a human resources employee met with plaintiff and informed him that his "Director" position was being eliminated. Rather than terminate plaintiff, however, Farmers offered him a position as a Vendor Management Consultant in the Claims Shared Services's business unit. Because the salary for the Vendor Management Consultant position was approximately $30,000 less than the now-eliminated "Director" position, Farmers offered to continue plaintiff's "Director" salary for an additional 12 months before allowing the new, lower salary to take effect. When plaintiff asked for further accommodation, Farmers agreed to pay him a blended salary (at the mid-point between the salary of the two positions) for an additional six months. Plaintiff then accepted the new position.

There is some dispute whether, at the January 2016 meeting, plaintiff expressed his feeling that his "Director" position was eliminated because of his "age" and because he "was close to retirement eligibility," and that "this was unfair"; plaintiff says he did, while Crawford and the human resources employee say he did not. At some point thereafter, plaintiff "explicitly outlined" to unnamed "superiors" his belief that his demotion was the product of "discrimination."

2. *Failure to be hired for Strategy & Process Consultant position*

In the summer of 2017, plaintiff was approached by Callie O'Hara (O'Hara), who was the "Head" of Process & Strategy for the Claims Litigation business unit. O'Hara was based in Farmers's headquarters in Woodland Hills, California. O'Hara needed help negotiating vendor contracts for Westlaw, and

Crawford had recommended plaintiff. O'Hara was impressed with plaintiff's work on those contracts.

Around the same time, O'Hara got authorization to create a new position called Strategy & Process Consultant to support her role as "Head."

O'Hara encouraged plaintiff to apply for this new position, and initially supported him getting that position, going so far in one instant message exchange to tell him: "I know from experience that you are the dude we need. We'll make it happen."

In late August 2017, O'Hara posted the announcement for the new position. This iteration of the posting did not specify that relocating to Woodland Hills was either "required" or "preferred."

One day later, O'Hara updated the posting to specify that applicants willing to relocate to Woodland Hills were "strongly preferred" over those unwilling to do so.

In early September, plaintiff participated in a screening interview for the position. He was 52 years old at the time. He told the screener that he was unwilling to relocate to Woodland Hills and instead proposed that Farmers make an exception for him. Because of his unwillingness to relocate, he was not called back for a second interview.

Two applicants were called for second interviews—namely, Carrie Lane-Johnson (a 48-year-old black woman) and William Houglam (a 58-year-old white man). Lane-Johnson was ultimately offered the job of Strategy & Process Consultant.

### 3. *Failure to apply for the Vendor Staff Manager position*

In early 2018, plaintiff's supervisor got promoted, which left the supervisory Vendor Staff Manager position vacant. The

supervisor was Christopher Britton (Britton).  Britton was based in Woodland Hills, California.

Britton encouraged several people, including plaintiff, to apply for the opening.

Britton ended up making three postings for the Vendor Staff Manager position.  Initially, the posting specified that relocating to Woodland Hills was "require[d]."  When no one applied during the posting's first week, Britton amended the posting to specify that the position was open to persons located in any of the cities where Farmers had a "hub" office, which included Olathe, Kansas.  When Britton started receiving applications from persons located in, or willing to relocate to, Woodland Hills, Britton amended the posting a second time to once again specify that a willingness to relocate to Woodland Hills was a "strong requirement."

Plaintiff never applied for this position because he was unwilling to relocate to Woodland Hills.

A 39-year-old black woman was ultimately offered the job of Vendor Staff Manager.

## II.  Procedural Background

Plaintiff sued Farmers[1] for (1) discrimination in violation of the Fair Employment and Housing Act (FEHA) on the basis of race, gender, and age (Gov. Code, § 12940 et seq.),[2] (2) retaliation in violation of FEHA for complaining about his 2016 demotion,

---

[1]     Plaintiff also sued Farmers Insurance Group, Inc., later substituted Farmers Group, Inc., in its place, and ultimately stipulated to dismiss Farmers Group, Inc.

[2]     All further statutory references are to the Government Code unless otherwise indicated.

5

(3) failure to prevent discrimination under FEHA, and (4) wrongful termination in violation of public policy.[3]

Farmers moved for summary judgment or, alternatively, summary adjudication, and supported its motion with nearly 800 pages of evidence. Plaintiff opposed, and supported his opposition with an additional 400 pages of exhibits. Farmers filed a reply.

After a hearing, the trial court issued a 16-page written order granting summary judgment to Farmers on all of plaintiff's claims.

Following entry of judgment dismissing plaintiff's lawsuit, plaintiff filed this timely appeal.

## DISCUSSION

Plaintiff argues that the trial court erred in granting summary judgment for Farmers on all of his claims. Summary judgment should be denied only when there are "genuine" or "triable" issues of fact to be resolved at trial—that is, when "the evidence would allow a reasonable trier of fact to find . . . in favor of the party opposing the [summary judgment] motion." (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 860 (*Serri*), citing *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 845; see also *Davis v. Kiewit Pacific Co.* (2013) 220 Cal.App.4th 358, 365.) We review a trial court's summary judgment ruling independently, without regard to its conclusions or its reasoning. (*Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 455.) In so doing, we may not weigh conflicting evidence or

---

[3] Plaintiff alleged a claim for wrongful *discrimination* in violation of public policy, but the trial court construed it as a claim for wrongful *termination* in violation of public policy. Plaintiff does not dispute this construction on appeal.

assess the credibility of witnesses (*Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297, 319), and must resolve any doubts against summary judgment and in favor of trial. (*Salas v. Sierra Chemical Co.* (2014) 59 Cal.4th 407, 415.) We will examine plaintiff's four claims separately.

## I.    Race, Gender, and Age Discrimination Under FEHA

### A.    *Pertinent law regarding FEHA and summary judgment*

Among other things, FEHA makes it unlawful "[f]or an employer, because of . . . race, . . . gender . . . [or] age . . . to discriminate against [a] person in compensation or in terms, conditions, or privileges of employment." (§ 12940, subd. (a); *Wallace v. County of Stanislaus* (2016) 245 Cal.App.4th 109, 122.) In evaluating such claims, California uses a burden-shifting mechanism. The plaintiff-employee must first establish a prima facie case of discrimination by producing evidence to show that "(1) he was a member of a protected class, (2) he was qualified for the position he sought . . . , (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal. 4th 317, 355 (*Guz*).) If he meets this burden, it is rebuttably presumed that the employer engaged in discrimination and the burden shifts to the employer to set forth a legitimate, nondiscriminatory reason for the "adverse employment action" the plaintiff-employee suffered. (*Id.* at pp. 355-356, 361; *Swanson v. Morongo Unified School Dist.* (2014) 232 Cal.App.4th 954, 964-965 (*Swanson*).) Once the employer sets forth such a reason, the presumption disappears and the burden shifts back to the plaintiff-employee to prove the employer ""engaged in intentional discrimination."" (*Swanson*, at p. 965, quoting

*McGrory v. Applied Signal Technology, Inc.* (2013) 212
Cal.App.4th 1510, 1529 (*McGrory*).)

This burden-shifting mechanism works differently when
evaluating a summary judgment motion.  (*Serri*, *supra*, 226
Cal.App.4th at p. 861.)  Where, as here, the employer is the
movant for summary judgment, the employer bears the initial
burden to disprove an element of the employee's prima facie case
or to adduce evidence supporting a legitimate, nondiscriminatory
reason for its adverse employment action.  (*Ibid.*; *Cheal v. El
Camino Hospital* (2014) 223 Cal.App.4th 736, 741 (*Cheal*).)  If it
does so, then the burden shifts to the employee to produce
"'substantial evidence'" that (1) "'the employer's stated reasons
were untrue or pretextual,'" or (2) "'the employer acted with a
discriminatory animus.'"  (*Serri*, at p. 861, quoting *Cucuzza v.
City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1038, italics
omitted; see also *Guz*, *supra*, 24 Cal.4th at p. 357.)  For these
purposes, evidence is "substantial" only if it "'permit[s] a rational
inference that the employer's actual motive was discriminatory.'"
(*Serri*, at pp. 861-862, quoting *Guz*, at p. 361; *Mamou v.
Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 686, 715 [no
"substantial" evidence where "employee's showing . . . is *too weak*
to sustain a reasoned inference in the employee's favor"].)  A
rational inference is one based on "'specific'" evidence, and hence
"'"based on more than mere speculation, conjecture, or fantasy."'"
(*Batarse v. Service Employees Internat. Union*, *Local 1000* (2012)
209 Cal.App.4th 820, 834 (*Batarse*); *Cheal*, at p. 755; *McGrory*,
*supra*, 212 Cal.App.4th at p. 1537.)

**B.** *Analysis*

The trial court correctly granted summary adjudication of
plaintiff's claim that the decisions not to hire him for the

8

positions of Strategy & Process Consultant and Vendor Staff Manager constituted discrimination under FEHA.[4]

Because it is undisputed that Farmers specified a job qualification for both positions that gave a strong preference to applicants willing to relocate to Woodland Hills and because it is undisputed that plaintiff did not satisfy that qualification because he was unwilling to relocate, plaintiff's discrimination claim ends up turning on whether Farmers adopted the geographical qualification in order to disqualify him from consideration based on his race, gender, or age.

1. *Farmers carried its initial burden*

Farmers carried its initial burden on summary judgment because it "adduce[d] evidence supporting a legitimate, nondiscriminatory reason" for the geographic preference for both positions—namely, that it was very important that the person who filled the two new positions be physically located in Woodland Hills. (*Serri, supra*, 226 Cal.App.4th at p. 861.)

The Strategy & Process Consultant position was specifically designed to aid O'Hara in her role as "Head" of her business unit, and O'Hara was located in Woodland Hills. What is more, the person holding the position would be tasked with analyzing information regarding the litigation process, evaluating the quality and accuracy of services provided by O'Hara's business unit, and proposing and implementing projects to improve those services. As a result, the position would require

_____

[4] We need not address whether Farmers engaged in discrimination prohibited by FEHA with respect to plaintiff's 2016 demotion because the trial court found his FEHA-based challenge to the demotion to be time-barred and because plaintiff does not challenge that finding on appeal.

9

"continual[] interact[ion] with members of both the Claims and Claims Litigation departments to identify new ways for making further improvements," an interaction made easier if everyone was in the same physical locale. These facts are all undisputed.

The Vendor Staff Manager served the needs of several business units within Farmers, all of which relied upon the Vendor Staff Manager and his staff within Claims Shared Services to negotiate their contracts with outside vendors; the key decisionmakers in these other units were located in Woodland Hills. Siting the Vendor Staff Manager in Woodland Hills therefore "facilitates the kind of day-to-day interaction and feedback that the position requires to operate effectively." Although, due to a personal circumstance, Britton had lived in Texas for the first two years he held the Vendor Staff Manager position, he ended up traveling to Woodland Hills at least two weeks every month and, after he moved to Woodland Hills, he "found the job much easier to perform." These facts are all undisputed.

2. *Plaintiff did not carry his responsive burden*

a. As to the Strategy & Process Consultant position

(i) Pretext

Plaintiff contends that he raised triable issues of fact as to whether Farmers's reasons for preferring the Strategy & Process Consultant position be staffed by someone located in Woodland Hills were "'untrue or pretextual,'" and hence a smokescreen for discriminatory animus based on race, gender, or age. (*Serri, supra*, 226 Cal.App.4th at p. 861.) He offers what boil down to three arguments.

First, he asserts that O'Hara offered conflicting reasons for not hiring him—namely, that (1) plaintiff was not qualified for

10

the position because he was unwilling to move to Woodland Hills, and (2) plaintiff lacked "the maturity and stability to perform" the position, did not "exhibit[] appropriate behavior that would be expected of him in" the position, and was not "forthcoming." To be sure, an employer's inconsistent reasons for an adverse employment action can create a triable issue as to pretext where the """"inconsistencies . . . or contradictions in the employer's proffered legitimate reasons for its action [are such] that a reasonable factfinder *could* rationally find them 'unworthy of credence,'""" and thus pretextual. (*Serri*, *supra*, 226 Cal.App.4th at p. 863, quoting *Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1005; see also *Guz*, *supra*, 24 Cal.4th at p. 363.) But the record does not support plaintiff's assertion that there was any inconsistency here. What is at issue in this case is whether the geographical preference for the Strategy & Process Consultant position was pretextual. And here, the sole reason for that preference was because having the position-holder in Woodland Hills was integral to the position. Thus, Farmers never offered inconsistent reasons for its geographical requirement. Further, even if we assume that what matters is the reason(s) why plaintiff did not get the position, there is *still* no inconsistency because the sole reason was his unwillingness to relocate. What plaintiff offers up as a second, allegedly inconsistent reason was, in reality, O'Hara's further opinion that she would not have hired plaintiff even if he *had* been willing to relocate because, in the days before he applied for the position, he had spontaneously broken down in tears in front of her, repeatedly aired suspicions that Howard was somehow "out to get him," and gave her incorrect information about his salary in

11

order to "manipulate" her in negotiations for the position.[5] O'Hara's further opinion was relevant to *causation*. At no point did O'Hara state that her concerns about plaintiff's emotional maturity, stability, and honesty were the reason he was not given a second interview; as a result, there are no inconsistencies giving rise to an inference of pretext.

Second, plaintiff asserts that a trier of fact could reasonably infer that the geographical preference was pretextual from the facts that he was otherwise qualified for the Strategy & Process Consultant position and that O'Hara thought well of him and had

---

[5] Plaintiff further seems to suggest that O'Hara fabricated these incidents because she did not make a contemporaneous notation of them. He cites *Wallace v. Seton Family of Hosps.* (5th Cir. 2019) 777 Fed.App'x. 83, 93, for the proposition that failing to make "contemporaneous" "written documentation" of an event can be evidence of pretext. But *Wallace* dealt with a supervisor's failure to contemporaneously document the later-proffered reasons for a termination decision. Here, the undisputed facts show that O'Hara did not take *any* action based on these incidents and did not rely on them when not extending plaintiff a second interview. Indeed, plaintiff himself does not dispute that these incidents occurred.

Relatedly, plaintiff argues that the trial court impermissibly weighed O'Hara's credibility when it noted that plaintiff's evidence of O'Hara's positive impression of his work did "not . . . tend[] to undermine" the evidence of O'Hara's later-expressed concerns about his emotional maturity and stability. But the court's comments do not evince a court crediting one explanation over another; instead, they reflect a court's observation that O'Hara's positive comments about plaintiff's past work and qualifications are not, as a matter of logic, inconsistent with her misgivings about his temperament for the Strategy & Process Consultant position.

all but promised him the position. However, whether plaintiff was otherwise qualified casts no shadow over whether the geographical preference was warranted for the Strategy & Process Consultant position. And O'Hara's views about plaintiff's competence and her failure to honor plaintiff's expectation of getting the position—or, for that matter, even her promise to give him the position—do not constitute evidence that he was denied the position *due to his race, gender, or age*. (Accord, *Guz, supra*, 24 Cal.4th at pp. 360-361 [because FEHA "prohibit[s] discrimination" but not "lying," "an inference of intentional discrimination cannot be drawn solely from evidence . . . that the [employer] lied . . ."].)

Third, plaintiff asserts that there was no evidence that Lane-Johnson was already located in (or otherwise willing to relocate to) Woodland Hills, and that the award of the position to her—as an unqualified applicant—shows that the geographic requirement was a pretext. Although no party called the trial court's attention to direct evidence in the record regarding Lane-Johnson's geographic qualification, her qualification is reasonably inferred from the undisputed facts that Farmers enforced the geographic qualification by informing all applicants that those who were willing to relocate would be first-considered and another applicant aside from plaintiff did not pass the screening interview because he was unwilling to relocate. Plaintiff urges that we must infer Lane-Johnson's disqualification from the absence of evidence about her location, but that is not how it works: Courts draw inferences from evidence, not from the nonexistence of evidence. (*Mann v. Columbia Pictures, Inc.* (1982) 128 Cal.App.3d 628, 651 ["'A legal inference cannot flow from the nonexistence of a fact; it can be

13

drawn only from a fact actually established. [Citations.]"]; cf. *Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509, 1524 ["reasonable inferences [are] *drawn from the facts*"], italics added.)  Because there is no evidence from which we may infer Lane-Johnson was *not* geographically qualified, we are left with the sole reasonable inference that she was; as a result, there is no dispute of material fact on this issue.

(ii)  Discriminatory animus

For the first time in his reply brief on appeal, plaintiff argues that he presented evidence that Farmers acted with discriminatory animus.  Specifically, he points to passages in his deposition where he testified that O'Hara had called him to report that Howard and O'Hara's boss told her to impose a geographic requirement for the position because they wanted Lane-Johnson to get the job because "she had better longevity" than plaintiff, who was "closer to retirement."

While this may constitute direct evidence of discriminatory animus on the basis of age, plaintiff has forfeited his right to rely upon it.

Plaintiff did not mention this evidence in his opposition to Farmers's summary judgment motion.  He did not cite it in his separate statement.  He did not argue it at the hearing on the motion.  He did not raise it in his opening brief on appeal. Instead, he waited until his reply brief on appeal to cite and argue this evidence for the first time.  Although this evidence was contained in the papers submitted to the trial court when that court considered the motion, it is found on only three pages scattered throughout the 436-page transcript of plaintiff's deposition submitted by Farmers; what is more, Farmers had

14

highlighted the portions of the deposition it was using, but had not highlighted the passages plaintiff now urges upon us.

Plaintiff is therefore inviting us to reverse the trial court on the basis of evidence that he insists the trial court should have discovered on its own after combing through nearly 1,000 pages of record. We decline this invitation. Although a trial court has discretion to consider evidence not set forth in a party's separate statement (*Castillo v. Glenair, Inc.* (2018) 23 Cal.App.5th 262, 283), "summary judgment should not be reversed on [the] grounds that the [trial] court should have considered . . . evidence" that is "not referenced [by the parties], is hidden in voluminous papers, and is not called to the attention of the court at all." (*San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 316; see also, *North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 31 & fn. 6 [trial court is tasked with "impossible burden of determining both the existence and significance of facts unmentioned by the parties," particularly when it is "buried in the middle of a one-inch-thick set of documents"]; *Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 116 [trial court "does not have the burden to conduct a search for facts that counsel failed to bring out"].) The unfairness of reversing in these circumstances is only exacerbated where, as here, the party has waited until his reply brief to mention this evidence, thereby denying the opposing party any opportunity to respond. (E.g., *Tyler v. Children's Home Society* (1994) 29 Cal.App.4th 511, 526, fn. 8 ["[I]t is unfair to raise new arguments for the first time in a reply brief"].) Plaintiff's sole justification for waiting this long is to point to the allegations in his operative complaint that Howard told O'Hara that Lane-Johnson had "greater longevity compared to

15

[p]laintiff," and then to blame Farmers for not making a summary judgment motion that "address[ed all] the material facts set forth in th[at] complaint" (*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 168).  This is no justification at all.  It does not explain plaintiff's delay in bringing this evidence to the attention of *any* court, and it ignores that once Farmers put forth *evidence* showing a nondiscriminatory reason for failing to hire plaintiff, it was incumbent upon plaintiff to respond with *evidence* and not merely the *allegations* in his complaint.  It goes without saying that allegations are not evidence (e.g., *Soderstedt v. CBIZ Southern California, LLC* (2011) 197 Cal.App.4th 133, 154), and we reject plaintiff's attempt to equate the two in order to excuse his thirteenth-hour attempt to overturn the trial court's summary judgment ruling on the basis of evidence plaintiff plainly knew about, but elected not to present to that court.

        b.      As to the Vendor Staff Manager position

        (i)     Pretext

Plaintiff argues that he also raised a triable issue of fact as to whether the geographic requirement for the Vendor Staff Manager position was a pretext because Britton was able to do the job from Texas for two years.  It is undisputed, however, that Farmers had hired Britton for that position with the understanding he would move to Woodland Hills within the first year of the job; that Farmers accommodated his personal circumstances by allowing him to travel to Woodland Hills for at least two weeks out of every month for another 12 months; that Britton did relocate to Woodland Hills; and that the job was "much easier" for Britton "to perform" once he did.  That it was possible for Britton to manage doing the job remotely but with frequent, extended travel does not create a triable issue of fact as

16

to whether Farmers had a legitimate, nondiscriminatory reason for requiring or strongly preferring that the person hired to replace Britton be located in Woodland Hills. And it certainly raises no inference that the geographic requirement was motivated by discriminatory animus against plaintiff.

(ii) Discriminatory animus

Plaintiff suggests that the trial court erred, when finding that there were no triable issues of material fact as to animus, in relying upon Britton's declaration that he did not consider race, gender, or age when fashioning the geographic requirement or in filling the position. In plaintiff's view, Britton's statement was not competent evidence because it constituted a legal conclusion and because "affidavits must cite evidentiary facts, not legal conclusions or 'ultimate facts.'" (*Hayman v. Block* (1986) 176 Cal.App.3d 629, 639.) We reject plaintiff's suggestion for several reasons. To begin, ignoring Britton's statement does not create a triable issue of material fact because ignoring it still leaves the undisputed fact that the geographical requirement was justified for nondiscriminatory reasons. More to the point, whether or not Britton's statement might encompass a legal conclusion, it was also a factual statement about his reasons for implementing the geographical requirement and for hiring. If we were to accept plaintiff's view that an employer accused of discrimination is categorically barred from disclaiming a discriminatory motive for the employment decisions being challenged in a lawsuit, then summary judgment would never be appropriate. That is most certainly not the law.

17

c.     As to both positions

(i)     Pretext and animus

Plaintiff also makes three arguments as to why the geographical requirement for *both* positions was pretextual or otherwise motivated by discriminatory animus.[6]

First, he asserts that Farmers's insistence that the person who filled the Strategy & Process Consultant and Vendor Staff Manager positions be in Woodland Hills is pretextual because plaintiff is able to point to other positions within Farmers that *can* be performed remotely.  But plaintiff never presented any evidence that those other positions were similar to the positions at issue in this case with regard to their need for geographic proximity.  Without evidence of similarity, Farmers's differential treatment of the positions means nothing.

Second, plaintiff contends that an inference of discriminatory animus can arise when an employer tailors a job's requirements in order to exclude an employee from eligibility for that job.  (E.g., *Edwards v. Occidental Chemical Corp.* (9th Cir. 1990) 892 F.2d 1442, 1447); *Coble v. Hot Springs School Dist.* (8th Cir. 1982) 682 F.2d 721, 728-729.)  Because the geographical requirements for both positions he applied for excluded him, plaintiff continues, he has raised an inference of pretext.  He is wrong.  The principle plaintiff relies upon applies where the exclusionary requirement is unnecessary; it does not apply where, as here, the undisputed facts show that the requirement

[6]     Before the trial court, he made a fourth and fifth such argument—namely, that he was able to point to stray remarks made by supervisors at Farmers regarding age discrimination and to "me too" evidence regarding other Farmers employees claiming to be victims of age discrimination.  However, plaintiff does not renew either of these arguments on appeal.

18

has a reasonable business justification.  What is more, the fact that plaintiff presented evidence that O'Hara was pressured to add the job requirement does not create a triable issue *as to discrimination* where, as here, it is undisputed that the requirement is justified.

Lastly, plaintiff contends that, even if he did not demonstrate any pretext as to each position individually, he has demonstrated pretext when the cumulative totality of the evidence is taken into account.  Because we have not found any evidence of pretext as to either position, adding them together adds nothing to the equation.  Zero plus zero still equals zero.

(ii)     Trial court analytical errors

Plaintiff asserts that the trial court made several errors in its summary judgment ruling insofar as it applied the wrong standard and/or made analytical missteps.  These assertions are irrelevant because we are independently reviewing the ruling applying the appropriate standards and because we have, in the analysis set forth above, addressed—and rejected—each of the alleged analytical missteps.

\*     \*     \*

For all these reasons, we conclude that plaintiff failed to satisfy his burden of producing "substantial evidence" that Farmers's reasons for the geographical requirement were pretextual or that Farmers otherwise acted with a discriminatory animus.  (*Serri*, *supra*, 226 Cal.App.4th at p. 861.)  Summary adjudication of his FEHA-based discrimination claim was accordingly appropriate.

## II.    Retaliation Under FEHA

FEHA also makes it unlawful "[f]or any employer . . . to discharge, expel, or otherwise discriminate against any person

19

because the person has opposed any practices forbidden under this part . . . ." (§ 12940, subd. (h).)  To prevail on a retaliation claim, the plaintiff-employee must prove that "(1) he . . . engaged in a 'protect activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042.)  A claim for retaliation uses the same, three-step burden shifting mechanism as a claim for discrimination under FEHA.  (*Ibid.*)

The trial court properly granted summary adjudication of plaintiff's retaliation claim for two reasons.

First, he forfeited this claim by presenting no argument defending the retaliation claim in his papers opposing the motion. (*Wright v. Fireman's Fund Ins. Companies* (1992) 11 Cal.App.4th 998, 1011 ["It is clear that a defendant may waive the right to raise an issue on appeal by failing to raise the issue . . . in opposition to [a] summary judgment motion"].)  He made passing mention of his retaliation claim, but offered no argument.  This was insufficient to preserve the issue.

Second, and even if we overlook plaintiff's forfeiture, he presented no evidence of a causal link between his protected activity and the employer's action.  Plaintiff presented evidence that he engaged in protected activity by "explicitly outlin[ing]" to "superiors" his belief that his January 2016 demotion was the product of "discrimination."  Plaintiff also presented evidence that he did not receive the two promotions he sought in 2017 and 2018.  But he presented no evidence to connect the dots between the two.  More specifically, he presented no evidence indicating that decision-makers regarding the two possible promotions had any knowledge of his earlier complaints about his January 2016

demotion. Plaintiff states in his appellate briefs that Howard was involved in the January 2016 demotion and in the denials of his two promotions, but the citations to the record he offers in support of that statement at most establish that Howard was involved in the denial-to-promote decisions. No evidence suggests that Howard, O'Hara, or Britton had any knowledge of his complaints about discrimination. (*Arnold v. Dignity Health* (2020) 53 Cal.App.5th 412, 429 [summary judgment appropriate where "there is no evidence that anyone involved in the decision to terminate plaintiff's employment knew about the complaint or that it factored into their determination"].) At bottom, plaintiff asks us to infer that the unnamed supervisors to whom he complained somehow told Howard, O'Hara, or Britton about those complaints, but this inference is based on nothing but speculation and hence cannot constitute substantial evidence. (*Batarse*, *supra*, 209 Cal.App.4th at p. 834.)

## III. Failure to Prevent Discrimination Under FEHA

FEHA also prohibits "an employer" from "fail[ing] to take all reasonable steps necessary to prevent discrimination . . . ." (§ 12940, subd. (k).) This claim is by its nature derivative: Without actionable discrimination, there can be no failure to prevent discrimination. (*Thompson v. City of Monrovia* (2010) 186 Cal.App.4th 860, 880.) Because, as noted above, plaintiff's claim of discrimination under FEHA is subject to dismissal on summary judgment, so too is his claim for failure to prevent that same discrimination.

## IV. Wrongful Termination in Violation of Public Policy

To prevail on a claim for wrongful termination in violation of public policy, the plaintiff-employee must prove "'(1) an employer-employee relationship, (2) the employer terminated the

plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm.' [Citation.]" (*Nosal-Tabor v. Sharp Chula Vista Medical Center* (2015) 239 Cal.App.4th 1224, 1234-1235.) The public policy at issue must be "(1) fundamental, (2) beneficial for the public, and (3) embodied in a statute or constitutional provision." (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1256.) At least some courts have extended this cause of action to reach "disciplinary action[s]" short of termination. (*Garcia v. Rockwell Internat. Corp.* (1986) 187 Cal.App.3d 1556, 1562.)

The trial court properly granted summary adjudication of plaintiff's claim for wrongful termination in violation of public policy.

Because plaintiff's public policy-based claim in this case rests on the public policy against discrimination and retaliation embodied in FEHA, the propriety of summary judgment on plaintiff's FEHA-based challenges to his failure to be hired for the Strategy & Process Consultant and Vendor Staff Manager positions applies with equal force to his public policy-based challenges to those same employment decisions. (See *Mendoza v. Western Medical Center Santa Ana* (2014) 222 Cal.App.4th 1334, 1338.)

That leaves plaintiff's public policy-based challenge to his 2016 demotion, on which the trial court made no FEHA-based ruling because those FEHA-based claims were time-barred. Plaintiff's 2016 demotion was certainly not the product of improper retaliation because he did not complain about the demotion until *after* he was demoted. And his 2016 demotion was also not the product of any discrimination on the basis of race,

22

gender, or age because (1) Farmers offered undisputed evidence that the elimination of his "Director" position was the product of a legitimate restructuring of his business unit, and (2) plaintiff offered nothing in response beyond his own surmise and speculation that the restructuring was motivated by discriminatory animus, which is plainly insufficient to raise a triable issue of material fact.

## DISPOSITION

The judgment of dismissal is affirmed.  Farmers is entitled to its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

23